THE SEABOARD AIR LINE RAILWAY, A CORPORATION, PLAINTIFF IN ERROR, v. SAM SMITH, DEFENDANT IN ERROR.

1. The sequestration of witnesses from the court room during a trial, is a matter for the exercise of a sound judicial discretion by the trial court, and its action will not be disturbed unless it appears there has been an abuse of such discretion.

2. A party to a cause should not ordinarily be excluded from the court room because he is also a witness, and this doctrine applies to the agent of a corporation whose duty it is to look after the interests of the corporation in the case on trial, but where such an agent is not excluded from the court room during the trial, and is not put on the stand as a witness, and nothing was offered to be proved by him, the corporation does not show any injury of which it can complain because the court re-

fused to except the agent from an order excluding all the witnesses from the court room during the trial.

3. Where a declaration in an action against a railroad company for damages alleges that plaintiff "had occasion to walk a short distance on the railroad track of the defendant," and was struck and run over by one of its engines, such allegations are sufficient to authorize him to testify that at the time and place of the alleged injury he was walking on the track of the defendant railroad.

4. A witness who had "railroaded" for 16 years, and one who had been traveling on railroad trains for 20 years, may give their opinions as to the speed at which a train was running, they being present, and seeing the moving train.

5. The city of Lake City is authorized by its charter, as well as by general law, to pass an ordinance prescribing the speed of trains and engines within the corporate limits of said city, not in conflict with Section 2264, Revised Statutes of 1892, but under said section such an ordinance can not apply to the speed of a train running on a track located on a "traveled street," if it conflicts therewith.

6. Certain language used by the plaintiff's attorney in his address to the jury, held to be an abuse of the privileges of counsel, upon which the comments of the judge, to the jury, were not sufficient to remove the prejudice which such language was calculated to create.

7. A requested instruction predicated upon an hypothesis which limited the grounds of possible negligence to one, when under the evidence there may have been others, for the consideration of the jury, is properly refused.

8. Under Chapter 4071, Laws of 1891, when an action is brought against a railroad company for damages for per-

sonal injury, the burden of proving the injury is on the plaintiff, and this being shown, the burden of showing absence of negligence is on the defendant.

9.  There is no rule of law that it is not negligence for an engineer to run his engine within a municipal corporation over a street crossing (not through the traveled streets) at the rate of twenty miles an hour if he gives notice by ringing his bell and has his engine under control, and exercises such diligence as is necessary to be observed under the ordinary necessities of the company's business. The question of negligence must always depend upon the circumstances of each particular case.

10.  Section 2264, Revised Statutes of 1892, requiring sign boards at or near the crossings of highways, does not apply to the streets of an incorporated town or city, nor does the speed limit therein provided for apply to any streets except those traveled streets of a city upon or through which a track is located.

11.  A railroad company has not only a right, but it is its duty to operate its trains, and while it should always observe reasonable precautions to prevent injury, it is not required to observe unreasonable ones. People who walk on the tracks must take notice of these considerations, and should exercise a prudence commensurate with the known risks. If they fail to do so and are injured, they are themselves guilty of negligence, and in order that damages may be recovered by any one so injured, negligence of the railroad company must have existed and must have been the proximate cause of the injury. For if the heedlessness or lack of prudence of the party injured was the sole proximate cause of the injury he cannot recover damages, however negligent the railroad company may otherwise have been.

This case was decided by Division B.

Writ of error to the Circuit Court for Columbia county.

## STATEMENT.

The defendant in error, Sam Smith, hereinafter called the plaintiff, sued the plaintiff in error, hereinafter called the defendant, in the circuit court of Columbia county. The declaration contains three counts. The first in substance charges that on the 24th of April, 1905, the plaintiff had occasion to walk a short distance on the railroad track of the defendant at a point about three hundred yards west of the union passenger station in Lake City, in Columbia county, and about twenty yards east of where one of the public streets of said city crossed the said track of the defendant, the same being used as a public crossing, "in the usual course of foot travel as has been and was then the custom then and there and before and since to be used as a public thoroughfare by the citizens of said Lake City with the knowledge and consent of the said defendant then and there and since then and for several years previous to said date with the knowledge and consent of said defendant and while the plaintiff was then and there using due caution as a reasonable and prudent man and without any negligence on his part; that the defendant did then and there by its agents, &c. run one of its trains at a great and unlawful rate of speed and without giving any warning of the approach of same by ringing a bell or blowing a whistle, and carelessly and negligently and wantonly run said train unlawfully as aforesaid along the said track, and violently strike and run over the plaintiff and crushed and mashed off both of his legs, rendering him incapable of earning a living, and causing him great pain and suffering and permanent

injury; that plaintiff at the time of the injury was a strong and healthy man, thirty years old, and was earning from $1.50 to $2.00 per day; that he is uneducated and unable to earn a living except by manual labor, and is without means of support; that the train was running at a great and unlawful speed without ringing a bell or blowing a whistle, along a public and much traveled thoroughfare of the city and within twenty yards of a public street crossing on a thickly populated section of the city.

The second count, in addition to the allegations of the first count, charges that the agents of the defendant were grossly negligent in not seeing the plaintiff, who was in full view of the train, and in not giving him warning by blowing the whistle or ringing the bell.

The third count, in addition to the allegations of the two preceding counts, avers that the plaintiff, under the circumstances, had a right to believe that the defendant would operate its trains at the speed required by law, and that he would be warned of the approach of the train by the ringing of the bell and blowing the whistle, and if such had been the case he could and would have gotten off the track to have prevented the injury to himself, and that the alleged conduct of the defendant was gross negligence. The plaintiff claims $25,000.00.

The defendant, by its attorney, A. J. Henry, filed pleas of not guilty, and that the supposed injury of the plaintiff was caused by his own negligence.

Replication was filed, a trial had, a verdict rendered for the plaintiff for $1,750.00, a judgment entered for that amount and costs against the defendant. From this judgment a writ of error was sued out. Other pertinent facts will be stated in the opinion.

*Geo. P. Raney,* for Plaintiff in Error;

*F. P. Cone,* for Defendant in Error..

HOCKER, J. (*after stating the facts*) : The first assign-
ment of error is based on the ruling of the court refusing
to except Baya Harrison from an order excluding all the
witnesses from the court room during the trial. The defen-
dant moved to except Mr. Harrison because he was not
only a witness for the defendant, but also because he had
prepared the case for the trial and stood in the position of
client as a direct representative of the defendant. The
plaintiff objected to this motion and it was denied. The
sequestration of witnesses from the court room is a matter
for the exercise of a sound judicial discretion by the trial
court and its action will not be disturbed unless it
appears there has been an abuse of such discretion. The
condition of the law on this subject seems to be fairly
stated in 3 Wigmore on Evidence, Sec. 1841. It would seem
that a party to the cause should not ordinarily be ex-
cluded from the court room because he is also a witness,
and this doctrine would apply to the agent of a corpora-
tion whose duty it was to look after the interest of the
corporation in the case on trial. See Seaboard Air Line
Ry. v. Scarborough, decided June Term, 1906, of this
court. In the case at bar, however, Mr. Harrison was not
excluded from the court room during the trial. He was
not put on the stand as a witness, and nothing was offered
to be proved by him. It does not appear therefore that the
defendant was injured by the ruling of the court. Lenoir
Car Co. v. Smith, 100 Tenn. 127, 42 S. W. Rep. 879; The
Bark Havre, 1 Benedict's Dist. Ct. Rep. 295; Central
Railroad & Banking Co. v. Phillips, 91 Ga. 526, 17 S. E.

Rep. 952; Ryan v. Couch, 66 Ala. 244; 1 Greenleaf on Ev. (16th ed.) Sec. 432, 432a.

The second assignment of error is based on the action of the court in permitting the plaintiff to prove by his testimony that at the time and place of the alleged injury he was walking on the track of the defendant's railroad. The contention is that the declaration does not allege that he was walking on the track when injured, but that "he had occasion to walk a short distance on the railroad track of the defendant." We think that this allegation, taken in connection with the one that he was struck and run over, shows that he was on the track when injured.

The third and fifth assignments are based on the action of the court in permitting witnesses who were not experts to give their opinions as to the speed the train was running which struck and injured the plaintiff. One of these witnesses had "railroaded" for sixteen years, and the other had been traveling on trains for twenty years. We do not think the contentions made are tenable. Louisville & N. R. Co. v. Jones, 50 Fla. 225, 39 South. Rep. 485; 3 Wigmore on Ev., Sec. 1977, note 2.

The fourth assignment of error is not argued.

The sixth assignment is based on the action of the court in granting the motion of the plaintiff to strike from the evidence Ordinance No. 17 of the city of Lake City, and to withdraw the same from the consideration of the jury, over the objection of the defendant. The ordinance had been introduced by the defendant and is as follows:

## "SPEED OF TRAINS.

Section 1. It shall be unlawful for any railroad company to run or operate its engines or trains within the corporate limits of Lake City with or at a greater speed than as follows to wit: eight miles an hour within one-

fourth of a mile of its passenger station, and fifteen miles an hour within one-half mile of its passenger station.

Section 2. It shall be unlawful for any engineer or conductor to operate or run an engine or train within the corporate limits of Lake City at a greater rate of speed than eight miles an hour within one-fourth of a mile of its passenger station or fifteen miles an hour within one-half a mile of its passenger station.

Section 3. Any corporation or person violating the provisions of this ordinance shall be punished by a fine not exceeding twenty-five dollars or imprisonment not exceeding ten days."

The grounds of the motion were that the corporation of Lake City possessed no authority under its charter or under the law to make or enforce said ordinance within its corporate limits, the subject being exclusively regulated by the statutes of the state. The contention here of the defendant in error is, that the ordinance is merely a police regulation, and would not relieve the plaintiff in error from liability. We are referred to no statute in this state which would deprive the city of authority to pass and enforce such an ordinance in its entirety.

The only statute which seems to bear upon the question which we have found is section 2264 Revised Statutes of 1892. That section is as follows: "Every railroad company whenever its track crosses a highway shall put up large sign boards at or near said crossing with the following inscription in large letters on both sides of the boards, 'Look out for the cars.' In all incorporated cities the said company shall cause the bell on the engine to be rung before crossing any of the streets of a city, and their trains shall not go faster through any of the traveled streets of a city than at the rate of four miles per hour." It is

plain that the first sentence of this section does not apply to the streets of a city, for the subsequent sentence provides the precaution to be used before crossing them, *viz.*, that the engine bell shall be rung. This last sentence in its last clause then provides a speed limit of four miles *through the traveled streets of a city.* This clause does not seem to be intended to fix a speed limit where a track simply crosses a street, and is not located upon a street. To give it such a construction might, in some instances, make the law unreasonable. We think it was intended to fix the speed limit where a railroad track is located upon a traveled street, where the danger of injury to persons is greatest and where the greatest precautions are necessary. In so far as the ordinance conflicts with the statute, it would of course be inoperative. It could not apply to the speed of a train running on a traveled street. But the ordinance undertakes to limit the speed of trains within the entire corporate limits to eight miles an hour within one-fourth of a mile of the passenger station, or fifteen miles an hour within half a mile of the passenger station. It is apparent that the ordinance is much broader than the statute. As to the power of the city to pass the ordinance having this broader application, it seems to us that it is ample. Section 33, Chapter 5350, Laws of 1903, amending previous acts chartering the city of Lake City, gives the city power to pass "all ordinances necessary to the health, peace, convenience, good order and protection of the citizens." Independent of this provision it would seem that the city had power to pass and enforce such an ordinance as a police regulation. 3 Abbott's Municipal Corporations, Secs. 853, 854; Evison v. Chicago, St. Paul, Minneapolis & Omaha R. Co., 45 Minn. 370, 48 N. W. Rep. 6, 11 L. R. A. 434 and note. It is in proof in the case at

bar that the plaintiff was injured at a point in the city limits 2026 feet from the passenger station, in the track yard of Seaboard Air Line and The Atlantic Coast Line Railroad Companies, somewhere between 100 and 425 feet of a street crossing. There was proof tending to show that the train which injured the plaintiff was running at from ten to twelve miles an hour, and other proof tending to show a greater speed. The defendant was charged with negligently running its train at a great rate of speed at the time the injury occurred. The question of negligence was to be determined by the jury, and whether the train was or was not exceeding the speed limit of the ordinance entered into the question of its negligence. Its own testimony in connection with the ordinance tended to relieve the defendant of negligent conduct in this regard, and without meaning to say that compliance with the ordinance would exempt a railroad company from the charge of negligence under all circumstances, we think in this case the ordinance was competent evidence, as no extraordinary conditions existed which would have imposed on the company a greater degree of care than that imposed by the ordinance. For as we have said, the injury occurred in the track yards, and not upon a street or crossing, in open daylight, and under circumstances which show great negligence on the part of the plaintiff. Only one person besides the plaintiff appears to have been walking in the track yard at the time. The plaintiff appears to have been a young man in the full possession of his faculties. He was walking heedlessly along on the track of the Atlantic Coast Line Railway; he saw the Atlantic Coast Line passenger train coming on this track, and without looking or taking any sort of precaution he went diagonally across

to the track of the defendant, and stepping almost in front of a moving train was knocked off and injured.

Seventh assignment of error: The plaintiff propounded this question to Ben Jones, one of his witnesses, *viz.*: "Up and down these two tracks and on these two tracks running from Marion street up to where this man was hurt, I ask you if that is or is not frequently used by people walking?" The answer was "yes." This question was objected to as leading and as being irrelevant and immaterial. The record does not otherwise describe or identify Marion street. The plaintiff in his brief contends that it is identified by the map filed by the defendant. The map shows a street crossing the tracks near the point where the plaintiff was injured, but no name is given it. This matter should not have been left in obscurity. That a question is leading is no ground for reversal. Anthony v. State, 44 Fla. 1, 32 South. Rep. 818.

Eighth assignment of error: "The court erred in denying the motion of the defendant to withdraw the case from the jury and declare a mistrial, by reason or on account of the statements of the plaintiff's attorney in his argument to the jury, as shown on page 5 of the bill of exceptions." The plaintiff's attorney in his argument to the jury said: "That the plaintiff, a poor negro, who, if he did not get damages out of the defendant railroad company to support him the balance of his life, would be a ward on the county; that the amount of money sued for would not be missed by the defendant, nor would they stop their champagne suppers in consequence of their junketing trips; and also stated that by the reports of the interstate commerce commission there had been many thousands of deaths and injuries by accidents by railroad during the last year."

25—S C

The defendant objected to this method of argument as calculated to prejudice the jury against the defendant, and moved the court to withdraw the case from the jury and order a mistrial. The court sustained the objections to the quoted argument, but denied the motion to declare a mistrial. The judge orally instructed the jury as follows: "You are not to try this case by the number of accidents or the death rate for or in other states or this state by railroad commissioners or otherwise, but you are to try this case solely by the evidence, and you are not to allow this statement of facts to enter into your consideration in your verdict." There was no exception to this oral charge, as being insufficient to correct and remove the prejudice naturally excited by the language of the plaintiff's attorney. We will say, however, that in our opinion, it was insufficient. It ought clearly to appear that the court took such action as was sufficient to remove the prejudice and meet the exigencies of the case. Verdicts ought not to be won by such arguments. Florence Cotton & Iron Co. v. Field, 104 Ala. 471, 16 South Rep. 538; Galveston, H. & S. A. Ry Co. v. Kutac, 72 Texas 643, 11 S. W. Rep. 127. No authorities are cited to sustain the contention that it was as a matter of law the duty of the court to discharge the jury because of the objectionable language. It may be that the abuse of argument can be so aggravated as to be beyond the power of correction and to impose this duty on the court. We are disposed to think, however, that the question in the case at bar should have been brought here on an assignment based on the fact that the judge's correction was insufficient to overcome its prejudicial effect. Commonwealth v. Worcester, 141 Mass. 58, 6 N. E. Rep. 700.

The ninth assignment of error is based on the refusal of

the court to give an instruction for the defendant, which evidently was intended to embody the doctrine contained in the 8th head-note in the case of Florida Cent. & P. R. Co. v. Williams, 37 Fla. 406, 20 South. Rep. 558, and which doctrine was clearly applicable to this case. The instruction, however, as presented, was ambiguous and no error was committed in refusing to give it.

Assignments ten and eleven are based on the refusal of the court to give instructions which in effect directed the jury to find a verdict for the defendant, if they believed that the plaintiff was guilty of any negligence and the injury received by him was caused by such negligence. These instructions ignore the effect of any negligence on the part of the defendant, if the jury should find it was guilty of negligence, and were properly refused. Florida Cent. & P. R. Co. v. Williams, *supra.*

Assignment numbered twelve is based on the refusal of the court to give the following instruction: "If you believe from the evidence that the engine and train of the defendant was, at the time and place of the accident, being managed and propelled by the company's engineer and others of its servants then in charge of the train, and that the schedule and regulations adopted by the company regulating (regulated) the speed of its trains at that place, and that such regulations required its trains to be run at a rate of speed not exceeding six miles per hour, and that the said engineer and other servants of the defendant in charge of the said train violated said order and regulations and propelled the engine and train at an unlawful rate of speed in disobedience of such orders and regulations of the company, and that there was no negligence imputable to the defendant other than such excessive speed of the train, then your verdict should under the

plaintiff's declaration in this case, be in favor of the defendant." The enigneer stated in his testimony that the regulations of the company fixed the speed limit in the railroad yards at Lake City at six miles an hour. He also admitted that at the time of the injury to the plaintiff his train was rolling in without steam pressure at the rate of ten or twelve miles an hour. The plaintiff's evidence tended to show the train was running at the rate of from fifteen to twenty miles an hour. Granting that there were but two persons to be seen walking in the railroad yard, on or near the tracks, at the time of the accident, and that there was no occasion for extraordinary precautions, yet the city ordinance, as before stated, fixed the speed limits, and if the speed at which the train was running was in excess of that fixed in the ordinance, it would be evidence of some negligence on the part of the company. It was for the jury to determine whether such negligence existed, and whether it was a proximate cause of the injury. The instruction, we think, was properly refused.

The thirteenth assignment is based on the ruling of the court refusing to give the following instruction, viz: "The court instructs you that upon the allegation of negligence in this case the plaintiff has the burden of proof, and if he is guilty of negligence substantially contributing to the injury complained of you will find for the defendant." This instruction was properly refused. It offends against Chapter 4071, Laws of 1891, and the decisions of this court interpreting and enforcing the same. Under the statute the burden of proving injury is on the plaintiff, and this being shown, the burden of showing the absence of negligence is on the defendant. Consumers Electric Light & St. R. Co. v. Pryor, 44 Fla. 354, text 381, 382, 388, 32 South. Rep. 797; Jacksonville Electric Co. v. Adams, 50

Fla. 429, 39 South. Rep. 183; Florida Cent. & P. R. Co. v. Foxworth, 41 Fla. 1, text 63, 25 South Rep. 338; Florida Cent. & P. R. Co. v. Williams, 37 Fla. 406, 20 South. Rep. 558; Morris v. Florida Cent. & P. R. Co., 43 Fla. 10, text 25, 29 South. Rep. 541.

What we have said as to the twelfth we think applies to the instruction refused and made the basis of the fourteenth assignment of error.

The fifteenth assignment of error is based on the refusal of the court to give an instruction which undertakes arbitrarily and in the abstract as a matter of law to say that it is not negligence for an engineer to run his engine within a municipal corporation not through the traveled streets, over a street crossing at the rate of twenty miles an hour, if he give notice by ringing his bell, and has the engine under control and exercises such diligence as is necessary to be observed under the ordinary necessities of the company's business. We are not advised of any such rule of law. The question of negligence must always depend upon the circumstances of each particular case. Authorities cited *supra*.

The trial judge of his own motion instructed the jury that "the law of this state provides that a railroad company, when its track crosses a highway, shall put up large sign boards at or near said crossing with the following instructions in large letters: 'Stop, look and listen.' " It also provides that in all incorporated towns and cities it shall cause the bell of the engine to be rung before crossing any streets of said city or town, and a train shall not go faster through any of the traveled streets or thoroughfares than at the rate of four miles an hour. This was objected to and assigned as error. It is evident that the trial judge attempted to apply each of the provisions of

Section 2264 Revised Statutes of 1892 to the facts of this case. The injury to the plaintiff occurred in what the witnesses call the railroad yard in Lake City. This yard is not a street of the city, as an uncontradicted witness positively testifies, though people walked on and about the tracks. There are four tracks at the point where the injury occurred. According to the map filed in evidence, made by the county surveyor of Columbia county, there is a street crossing the tracks about 425 feet east of the point where the plaintiff was injured. Defendant's passenger train was going east, on a down grade towards the street crossing and the passenger depot. As we have said before we do not think the quoted section of the statute requiring sign boards at or near the crossing of highways applies to the streets of an incorporated town, nor does the speed limit therein provided for apply to any streets except those *traveled streets of a city,* upon and through which a track is located. We think this charge, taken as a whole, was erroneous, as applied to the facts of this case, and calculated to mislead the jury. Whether the defendant failed in duty in not seasonably ringing its engine bell so as to warn the defendant of danger, and whether it failed in any other duty which the circumstances required, and whether, if it did so fail, such negligence was a proximate cause of the injury, should, under the circumstances, have been submitted to the jury; for the duty of a railroad company in operating its trains is always conditioned by the exigencies of any particular situation, and to be ascertained from them, and this is true, independent of the statutory provisions. It must not be forgotten that a railroad company has not only a right to operate its trains but it is its duty to operate them, and while it should always observe reasonable precautions to prevent

injury, it is not to be required to observe unreasonable ones. People who walk on the tracks must take notice of these considerations, and should exercise a prudence commensurate with the known risks. If they fail to do so, they are themselves guilty of negligence, and if they are injured in order to their recovery of damages negligence of the railroad company must have existed, and must have been the proximate cause of the injury. For if the heedlessness or lack of prudence of the party injured was the sole proximate cause of the injury he cannot recover damages, however negligent the railroad company may otherwise have been. If an individual, in the possession of his faculties, heedlessly and imprudently places himself in front of a train even though running at an excessive speed, so close to the engine that the train could not be stopped with the best devices in general use, even if it had not been running at an excessive speed, in time to prevent injuring the individual, and the railroad company did not fail in any other duty demanded by the conditions then known by its employees to exist, a compliance with which might have prevented injury, it cannot be said that its negligence in running at an excessive speed was a proximate cause of the injury. Several other charges given by the court are assigned as error. Among them the 8th, 14th, 16th and 17th. As to the eighth, we think it would have been better if it had been therein clearly stated that to enable the plaintiff to recover on the ground of the alleged negligence of the defendant, such negligence must have been a proximate cause of the injury. Charge numbered 14 and 16 are evidently taken from Florida Cent. & P. R. Co. v. Foxworth, *supra,* and the law stated in head-notes 12, 13 and 15. We think, under the circumstances of this case these charges were calculated to mislead the jury, as in the

case at bar the track of the defendant was not along the street of the city, and the plaintiff at the time of being injured was not attempting to cross the track near a crossing. He got on the track in front of the engine and was walking down the track towards his destination. Charge No. 17 was, we think, misleading as to the measure of damages, and was not in accord with the law as laid down by this court in Florida Ry. & Nav. Co. v. Webster, 25 Fla. 394, text 422, 425, 5 South. Rep. 714.

The judgment is reversed and the cause remanded.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.