THE PEOPLE'S NATIONAL BANK OF ORLANDO, A CORPORATION, *Plaintiff in Error,* v. J. B. MAGRUDER, *Defendant in Error.*

Opinion filed March 14, 1919.

1. In a common law action where the plaintiff files replications to defendant's pleas and goes to trial without issue joined upon such replications they will be considered waived.

2. In a case where issue is not joined upon the replications, but evidence is offered in support and denial of the matters set up therein, the jury's finding thereon will not be disturbed if the evidence submitted was sufficient to support such finding.

3. Where pleas set up an immaterial issue and the parties go to trial upon such issue, the trial court should either give judgment for the plaintiff *non obstante veredicto* or grant a

repleader, and if that course is not followed an Appellate Court should reverse the judgment if for the defendant, although it may not direct a judgment of repleader.

4. Where the president of a bank contracts for improvements or repairs to be made upon a building which is occupied by the bank as its place of business, and the board of directors of the bank in session authorize and empower ·the president to cause such improvements or repairs to be made, such contract will be deemed to be the bank's obligation.

5. Where a landlord makes improvements or changes in· a building at the request of the tenant in possession holding under an expired lease, in consideration of the latter's oral promise, to take a five year lease of the permises to begin at the expiration· of the present lease which does not expire within a year from the making of such promise, the landlord may recover in an action at law from the tenant for money paid by the landlord for the tenant at his request upon the latter's refusal. to take a five year lease of the premises at the landlord's request.

A Writ of Error to the Circuit Court for Orange County; J. W. Perkins, Judge.

Judgment reversed.

*V. S. Starbuck* and *John M. Cheney,* for Plaintiff in Error;

*Robinson & Beardall* and *Davis & Giles,* for Defendant in Error.

Ellis, J.—The Peoples National Bank of Orlando sued J. B. Magruder upon two promissory notes each for eight hundred dollars. The notes were made ·by Magruder and were payable to the order of the bank. Each

bore interest at the rate of ten per cent per annum after maturity, and each provided for the payment of reasonable attorneys' fees in case it should become necessary to collect the note through an attorney. One note was dated July 23, 1913, and the other August 15th of the same year. Each note was payable sixty days after date.

Magruder averred in substance in his first plea that he owned the building occupied by the plaintiff as its place of business, and the plaintiff was his tenant, and that the lease expired August 15, 1913, the date of the last note; that the note dated July 23, 1913, was given as the result of an oral agreement between the plaintiff and the defendant whereby it was agreed that if the defendant would permit the plaintiff to make certain improvements and alterations in the "rooms and building by changing the entire front for the express purpose of rendering the same suitable for banking business," the defendant to pay the expense of such alterations, that the plaintiff would retain and occupy the premises thereafter and pay an increased rental therefor of seventy dollars per month until a written agreement could be made between the parties whereby the premises were to be leased to the plaintiff for a period of five years at seventy dollars per month; that the improvements were made pursuant to such agreement; the cost thereof, amounting to $1,127.50, was charged to Magruder, for which he gave the promissory note sued upon in the first count of the declaration, but that the plaintiff failed and refused to occupy the building and pay the rent agreed upon therefor since October 15, 1913, and refused to enter into the agreement of lease; that the alterations made in the building were of peculiar value to the plaintiff for its banking business and of no value to the

defendant, therefore the consideration for the note had failed.

The same plea was interposed to the second count of the declaration which was based upon the note dated August 15, 1913.

In a third plea interposed to the two counts of the declaration the defendant set up the same facts, but admitted that the notes were given for the cost of the alterations in the building plus $472.50, which latter sum the defendant owed to the plaintiff for money loaned by the plaintiff to the defendant. This plea also averred that the consideration for the two notes had wholly failed.

In a fourth plea to the declaration the defendant offered to set off against the plaintiff's claim the sum of $210.00, the same being the amount of the rental of the rooms from October 15, 1913, to the date of the institution of the suit, which was January 6, 1914.

By a fifth plea to the declaration the defendant pleaded the same facts that were averred in the first plea, and the further fact that an additional sum of one hundred dollars was spent for wiring by him at plaitiff's request under the agreement to occupy the building and enter into a five year lease, which made the total cost of the improvements $1,227.50, which the defendant offered to set off against the plaintiff's claim.

A sixth plea averred that the plaintiff was indebted to the defendant in the sum of $130.60 for work done and materials furnished at plaintiff's request consisting of flooring laid in the banking rooms and moving picture advertisements, which sum the defendant offered to set off against the plaintiff's claim.

Plaintiff demurred to the first, second, third and fifth pleas. The matters of law to be argued in support of the demurrer to the first, second and third pleas were: that the oral agreement set up in the pleas was void under the statute of frauds; that a breach of a contract within the statute of frauds does not constitute failure of consideration of a promissory note given in payment of a debt arising *collaterally* thereto; that the pleas did not show failure of consideration, but showed that the notes were given for money expended in improving defendant's property, and that "an oral agreement to enter into a written agreement which would be unenforcible under the statute of frauds is [if] not reduced to writing is likewise unenforcible and a breach thereof cannot be assigned either as a cause of action or as a ground of defense."

The matters of law to be argued in support of the demurrer to the fifth plea were: that the plea contained no proper matter of set off; that in the plea the defendant relied upon a breach of a contract unenforcible under the statute of frauds; that a breach of such an agreement could not be pleaded by way of set off, and that the contract set up in the plea was unenforcible under the statute of frauds.

The demurrer was overruled.

The plaintiff joined issue upon all the pleas and interposed seven replications to the first, second, third, fourth and fifth pleas, alleging in substance that neither the agreement set up in the pleas nor any memorandum thereof was made in writing and signed by the plaintiff nor any one by it lawfully authorized, and that the agreement was for a lease of lands for a longer period than one year; that the agreement was not to be per-

formed within the space of a year, and was not reduced to writing, nor was any memorandum thereof made and signed by the plaintiff, nor by any one by it lawfully authorized; that the improvements mentioned in the pleas were made in July, 1912; that the verbal agreement was made about the same time, and that the written agreement was to take effect, according to the terms of the oral agreement, on August 15, 1913, more than one year from the time the oral agreement was made; that the written agreement was to have been signed when the improvements were completed; that the plaintiff caused a draft of the proposed lease or agreement to be made, but the defendant refused to sign it; that the improvements were a benefit to the defendant's property and he could have with reasonable diligence rented the premises for large sums, but the defendant refused to do so after the plaintiff vacated the premises; that the improvements made included a room occupied by W. S. Branch as a stationery store; that the cost of such improvements was paid by the plaintiff at defendant's request and the notes were given for the sums of money so expended upon the improvements for both rooms; that before August 15, 1913, the defendant notified the plaintiff that he would not rent the premises to the plaintiff upon the terms agreed upon and discharged and released the plaintiff from the contract, and the plaintiff vacated the premises October 15, 1913, and that the notes sued upon were renewals of other notes the consideration for which was money loaned by the plaintiff to the defendant.

The plaintiff also filed a motion to require the defendant to elect whether he would rely upon the first, second and third pleas, or the fifth plea, it being contended that the latter plea was a mere repetition of the first three.

This motion was granted and the defendant elected to retain the fourth, fifth and sixth pleas and interposed by leave of court his first and second amended pleas. These pleas were identical in substance and were interposed to the first and second counts of the declaration. They averred that the improvements were made at the plaintiff's request, that the expense amounted to $1,227.50 and was charged by the plaintiff to the defendant; that this was done, that is to say, the improvements so made and the charging of same to the defendant's account, in consideration of the plaintiff's oral promise to retain the premises until a "further written lease contract should be entered into by the parties at the monthly rental of $70.00 per month," and the plaintiff's further agreement then made to immediately and with all convenient speed to enter into a written contract with defendant to lease the rooms for a period of five years at $70.00 per month. That the notes were given on account of the cost of the improvements or changes, but that the plaintiff had failed to keep its agreement to occupy the building, had refused to enter a contract or lease as agreed, had refused to pay rent for the building since October 15, 1913, and had vacated the premises; that the improvements were of peculiar value to the plaintiff, and defendant did not have "installed" the same save only in consideration of the plaintiff's promise; that the alterations of the building, the agreement between the plaintiff and the defendant, the giving of the notes and all the facts set out in the plea grew out of and were a part of the same transaction "by all of which defendant was and is damaged in a sum equal to the amount claimed by plaintiff which damages" the defendant should recoup from the plaintiff's claim.

16—Vol. 77.

A demurrer to these amended pleas was overruled. The demurrer attacked the pleas upon the same grounds substantially as the demurrer which attacked pleas numbered one, two, three and five. Under the demurrer to the amended pleas it was urged that the pleas showed the plaintiff to be a tenant at will, or at sufference.

The plaintiff then joined issue upon the two amended pleas, and interposed nine replications thereto, seven of which were in substance. the same as were interposed to the first, second, third and fifth pleas; and further that the agreement set up in the amended pleas "undertook to create a term of years of more than two years" and the same was not created by deed in writing signed and sealed in the presence of two subscribing witnesses by the defendant, and that the agreement was not in writing; that the rent thereunder was payable monthly, whereas the plaintiff became a tenant at will and vacated the premises on October 15, 1913, after notice of the termination of the lease. Like replications were interposed to the fifth plea.

There appears to have been no joinder of issue upon the replications interposed by the plaintiff to the fifth plea and the two amended pleas, and the case came to trial "on the issues joined," so the record recites, on May 11, 1917, about ten months after the filing of the plaintiff's replications.

There was a verdict for the plaintiff in the sum of $241.90, with interest at ten per cent from October 15, 1913. Judgment was entered in favor of plaintiff against the defendant in the sum of $328.25. The verdict was seemingly arrived at by allowing the defendant the sum of $1,227.50, which was made the subject of the two

amended pleas of recoupment, and the sum of $130.60 which was made the subject of the sixth plea of set off, and deducting the total of $1,358.10 from the principal of the two notes which amounted to $1,600.00.

When the motion of the plaintiff to require the defendant to elect between his first, second and third pleas on the one hand, and his fifth plea on the other, was granted, and the defendant by leave of court filed his two amended pleas to the declaration, he abandoned the first, second and third pleas, retaining the fourth, fifth and sixth pleas. These pleas as stated were pleas of set off in which the claims for three months' rent, the entire cost of the improvements and the flooring and moving picture advertisements were urged.

When the plaintiff went to trial before any issue was joined on the replications interposed to the two amended pleas it waived such replications because it is the duty of the parties before going into trial to see that the pleadings are made up, and when they go willingly before the jury they will be considered as having waived all demurrers undisposed of and replications on which the issues are not joined. See Judge v. Moore, 9. Fla. 269; Livingston v. L'Engle, 22 Fla. 427; Franklin Phosphate Co. v. International Harvester Co. of America, 62 Fla. 185, 57 South. Rep. 206.

Whether the above rule should be applied to this case or not the result will be the same, because much of what was contained in the replications amounted to nothing more than a demurrer to the pleas in that it consisted of a construction or interpretation of the contract set up in the pleas and the trial court's view of the agreement was expressed both in his rulings upon the demurrer to

the pleas and his charges to the jury. As to other matter contained in the replications which might be considered as new and therefore a reply to the pleas, evidence was offered and received both in support and denial and the jury found against the plaintiff upon the issue presented, and we cannot disturb the finding upon such matter because the evidence was sufficient to support it. But the plaintiff moved for a judgment *non obstante veredicto*. If the pleas set up an immaterial issue and the trial was upon the issue joined upon the pleas as appears to have been the case, then if the issue was immaterial the court should have granted the motion for a judgment *non obstante veredicto,* or granted a repleader, and not having done so, this court should reverse the judgment though it may not direct a judgment of repleader. See Jones v. Shomaker, 41 Fla. 232, 26 South. Rep. 191; Evans v. Kloeppel, 72 Fla. 267, 73 South. Rep. 180. Now the demurrer to the pleas questioned their sufficiency and the court overrueld the demurrers, and assignments of error are based thereon.

It is contended in the first place by the plaintiff that its president or other officer who in behalf of the bank made the agreement with the defendant had no authority from the board of directors to make such a contract. This point, we think, is not well taken. The point is made upon an assignment of error based on matter appearing in the bill of exceptions, but we will dispose of it here in this connection for convenience. The contract related to the matter of securing a place in which the plaintiff might transact its affairs, a thing absolutely necessary to the carrying on of the banking business. If it were not thus within the scope of the president's apparent authority, the matter seems to have received

full consideration by the board of directors who in session discussed and officially authorized, empowered or ratified the president's action in the premises. It appears that the directors appointed a committee to take charge of the changes in the bank front, to secure bids on the work, to prepare plans for the proposed new front; that the plans selected were approved and the work directed to be commenced when satisfactory bids were received and the matter of the lease with Mr. Magruder to be settled. We think this action by the directors of the bank constituted full authority to the president to make the agreement. See Cotton States Belting & Supply Co. v. Florida R. Co., 69 Fla. 52, 67 South. Rep. 568.

The pleadings do not aver nor does the evidence show that the thing to be done and which was contemplated by the oral agreement of which it was the subject, was not to have been performed within a year. The oral agreement was made, it is true, about July, 1912, and the bank's lease expired August 15, 1913, more than a year after the oral agreement was made, but the subject of the oral agreement was the early making of a written contract by the plaintiff for the lease of the property to begin at the expiration of the present lease. According to one of the replications of the plaintiff the written contract was to have been signed when the improvements were completed and the plaintiff caused a. draft of the contract or lease to be made. The making of the written contract of lease was the thing to be done by the plaintiff under the oral agreement, and it was contemplated by the parties to be done immediately and expeditiously. Upon this point the jury seems to have decided in favor of the defendant, and there was sufficient evidence and matter of record to support the finding.

Now as to the oral agreement being merely one to create an interest in real estate and therefore within the provisions of Section 2448 of the General Statutes of 1906, we do not so regard it. It was nothing more nor less than an agreement by which the defendant undertook to spend money upon the plaintiff's request and for its convenience and benefit. It is a matter of no consequence how the money was spent and for what purpose, so that it was spent at the plaintiff's request upon its direction and for its benefet. If the expenditure of the money also benefitted the defendant, that did not relieve the plaintiff of its obligation to pay which the law casts upon it, although it may be a matter to be considered in reduction of damages, but certainly not in discharge of the plaintiff's obligation cast upon it by the law to pay. Now the plaintiff agreed to pay for the improvements in a certain way, namely, by taking a long lease upon the premises at an advanced rental; but the plaintiff declined to pay in that way because its promise to pay in that way, it says, is void under the statute of frauds. If that is true, shall it be relieved of its implied promise to pay for the benefits received? The two amended pleas and the fifth plea stripped of their unnecessary verbiage were nothing more than pleas of set off for money payable by the plaintiff to the defendant for money paid by the defendant for the plaintiff at its request. Issue was joined on these pleas, and the question was therefore merely whether the defendant spent the money at the plaintiff's request. The evidence amply supported the jury's findings.

According to the issues submitted to the jury, that which the defendant did, namely, paid for the cost of the changes in the premises for the plaintiff's benefit, was

the consideration for the plaintiff's promise to enter into the contract of lease. The promise may be void under the statute of frauds, but the fact that the contract did not bind the plaintiff will not be allowed to displace the obligation which would otherwise arise from the receipt and retention of value on the understanding that value was to be returned. The improvements were made at the plaintiff's request a year before the lease under which it held the premises expired. It received and enjoyed for one year the benefits of such improvements. It was not as if the defendant merely took steps to place himself in a position to furnish the consideration for the promise. The making of the changes was the consideration for the promise, and that consideration the plaintiff accepted and enjoyed for twelve months and then abandoned. Upon this theory alone may the defendant recoup from the plaintiff's claim the money spent at the plaintiff's request and for its benefit. We think there is a distinction between an agreement of one to build a house for another upon the latter's agreement to take a five years' lease when the house is completed, and an agreement between a landlord and his tenant in possession whereby the landlord makes improvements for the tenant's benefit and enjoyment upon the latter's promise to make another lease. In the first instance the consideration for the promise is the occupancy of the building which the proposed tenant expects to enjoy. In the later case the tenant actually receives and enjoys the consideration which is the improvement made at his request. The pleas aver that the improvements were made "at or about the time of the expiration of the said lease," referring to the lease under which the plaintiff held possession of the room. Evidence was introduced by the defendant showing that the bank had a two-year lease

which expired in August, 1913, and that the agreement concerning the changes was made and the changes completed in the summer of 1912. Assuming that the evidence supports the plea on this point, the next matter to consider is the averment of the plea as to the character of changes or improvements the bank desired the defendant to make. The pleas aver that when the agreement was made the bank was occupying the premises of the defendant known as "The Peoples National Bank's *room* in the building known as the Arcade Building." That the plaintiff desired "extensive and costly changes in the construction of the said *rooms* and building by changing the entire front thereof," etc. We construe this language to mean that the improvements or changes were to be confined to the change or rearrangement of the front of the room or rooms occupied by the bank. In so far as such changes were made the bank received, accepted and enjoyed the same as the consideration for its promise in words to make a new contract of lease.

Now the evidence for the defendant in the matter of the cost of improvements was much broader than the averments of the plea in that it covered the cost of that part of the front of the building which constituted part of premises occupied by another tenant named Branch, who conducted a stationery store—pine floors in the back room which seem to have been put down at plaintiff's request, but not in pursuant of the original oral agreement, and the expense of plastering rooms in the building on the second floor which seem not to have been included in the agreement. In so far as these items entered into and became a part of the allowance made by the jury as proper to be recouped from the plaintiff's claim,

the verdict is wrong. The items for moving picture advertisements were properly allowed.

It is unnecessary to discuss the other assignments of error.

The judgment is reversed.

BROWNE, C. J., TAYLOR, WHITFIELD AND WEST, J. J., concur.