ATLANTIC COAST LINE RAILROAD COMPANY v. JOSEPHINE CANADY, a minor, by Emma Dyer, widow, her next friend.

165 So. 629.

Division B.

Opinion Filed February 6, 1936.

*LeRoy B. Giles* and *Warren B. Parks,* for Plaintiff in Error;

*George A. DeCottes,* for Defendant in Error.

ELLIS, P. J.—The tracks of the Atlantic Coast Line Railroad Company cross First Street in the City of Sanford about a mile and seven-tenths from the center of the business part of the city. First Street is about eighty feet wide, of which sixteen feet down the center of the street is paved with brick. The course of the street from Sanford is northwesterly; that is to say, slightly north of a westerly course. The railroad tracks, four in number where they cross First Street, follow a northwesterly course; that is to say, a course slightly west of a northerly course. At the point of intersection of the Street by the railroad tracks the two main line tracks lie to the eastward of the two other tracks about a hundred feet or more.

At the center of the vacant space of a hundred feet and north of the brick part of the street about fifteen feet a watchman's bench and shed are placed, at which a watchman, employed by the railroad to warn pedestrians and other travelers upon the highway of approaching trains and locomotives of the Railroad Company, is stationed. His method of warning is to wave a red flag at approaching travelers and vehicles upon the street when a train or locomotive is approaching the crossing.

North of the brick pavement about twenty feet, and east of the east track main line about seventy-five feet, is located a building called a warehouse, and a few feet east of that house is a small house used as a store. South of the brick street twenty feet distant and east of the track about sixty feet is a building called a warehouse.

About one-eighth of a mile south of the street and east of the main track possibly sixty or seventy feet is the home

of Anna Mae Canady, the mother of Josephine, a negro girl about nine years old. From the diagram of the location above described, the warehouse south of the track and the Canady home are the only two buildings in a vacant lot, or field, approximately two hundred feet square. Leading from the Canady home, eastward about one hundred and fifty feet, is a road which at that distance from the house turns north at right angles to the brick pavement of First Street about two hundred feet east of the railroad track. Pedestrians traveling that road who wish to go to the store walk diagonally westward across the street. The location of the railroad crossing is in the extreme western limits of the City of Sanford about seven hundred feet from the boundary line.

On the fourteenth of October, 1933, Josephine Canady and her brother younger than she, having a penny each to spend, the gratuity of a man for whom Anna Canady renders some service, left their home by the road and went to the store and purchased candy. Leaving the store, they went westward toward the railroad track, intending to walk southward on the railroad track to a point west of their home and then home.

When Josephine stepped upon the railroad track at the north side of the paved part of the street an engine of the Railroad Company, backing northward to the crossing with its whistles blowing and bells ringing and flagman waving his signals of the approaching locomotive, struck her and injured her seriously. The result of her injuries was the loss of her right foot which was removed by a surgical operation, several weeks in a hospital and much suffering.

In February, 1934, Josephine, by her next friend, Emma Dyer, brought an action against the Railroad Company and the flagman, T. A. Jordan, for damages for personal in-

juries. There was a plea of not guilty, a trial and verdict for the plaintiff in the sum of twenty-four hundred dollars and judgment entered for that amount. The verdict exonerated the flagman, T. A. Jordan, and the judgment was entered against the Railroad Company solely. At the conclusion of the testimony there was a motion for a new trial, which was overruled. The defendant also moved for "judgment *non obstante veredicto*," which was also overruled.

A writ of error was taken to the judgment.

A motion for a judgment *"non obstante veredicto"* under the common law was applicable in behalf of the plaintiff only where the plea confessed the cause of action, but set up insufficient matters of defense in avoidance, although such matters were found to be true. It could never be entered for the defendant. See 33 C. J. 1178. See also application of rule in Gergory v. McNealy, 12 Fla, 578 (dictum p. 586).

In Pillet v. Ershick, 99 Fla. 483, 126 South. Rep. 784, however, it was stated that the rule was relaxed in this State in cases where a plea setting up a meritorious defense has been fully sustained and not met by the plaintiff, or where the declaration fails to state a cause of action, but a verdict is nevertheless found in favor of the plaintiff. See 33 C. J. 1181; Sec. 4615 C. G. L. 1927; 14 Stand. Ency. of Prac. 959; Peoples Nat. Bank of Orlando v. Magruder, 77 Fla. 235, 81 South. Rep. 440.

The motion was made in this case not because the declaration filed to state a cause of action, or because the pleas set up a meritorious defense which was not met by the plaintiff, but because the evidence showed and the jury found the fact to be that the servant of the Railroad Company, the flagman, through whose alleged negligence the fault of the

principal attached as the defendant claimed the theory of the declaration to be, was not guilty of wrong or negligence.

Of course, if the theory of the declaration was that the Railroad Company was liable because of the negligent act of its flagman only and the jury found the flagman to have been guilty of no negligence, there should have been a verdict also for the Railroad Company. In the case of Williams v. Hines, 80 Fla. 690, 86 South. Rep. 695, this Court held that in such case a judgment notwithstanding the verdict was proper, thus further extending the common law rule to cases where a declaration stating a cause of action is not supported by the evidence. In other words, where a declaration states a cause of action based solely upon the negligent act of an employee of the other defendant and the jury exonerates the defendant employee there should be a judgment for the employer defendant notwithstanding a verdict for the plaintiff against him. See also Webster v. Snyder, 103 Fla. 1131, 138 South. Rep. 755, which cites the doctrine announced in Williams v. Hines, *supra.*

The declaration in this case, however, does not rest as against the principal solely on account of the alleged negligent act of the employee flagman, T. A. Jordan, because it contains allegations which seem to charge that the defendant Railroad Company also was negligent through its employees who operated the "locomotives and trains of cars" of the defendant corporation carelessly and negligently.

The declaration was obviously faulty as bad pleading because under an attack by demurrer the allegation that "at the point of the intersection of lines of track with said West First Street," the defendant corporation and T. A. Jordan, "disregarding their duty to use good and sufficient care and

management in the operation of locomotives and trains of cars over, upon and across said West First Street" at the point of intersection did "carelessly and negligently operate and use said lines of track" does clearly relate to the alleged negligent act of the flagman solely for whose negligent act the defendant became liable under the doctrine of respondent superior.

No demurrer was interposed, however, to the declaration, so the double aspect of the declaration, under which after verdict the plaintiff now claims the right to recovery because of the negligent operation of the locomotive by employees who were engaged in operating it, may have been waived. We do not determine that point here, however, as we will consider the case upon the evidence in the light of the double aspect of liability.

We have carefully examined the evidence and are unable to discover any negligent act whatsoever on the part of the engineer, fireman or conductor who were upon the locomotive when the same was being propelled across the street.

The little girl was careless and negligent in being there and in her manner of walking. Her head down, eating her candy, she did not observe the approach of the engine; did not see the flagman waving a warning of the approach of the locomotive, nor did she hear the whistle of the engine and the ringing of its bells as it approached.

The engine was backing. There was a tender, which is a car attached to a locomotive in which fuel is carried for the engine fires. For some distance those upon the engine could see objects upon the street crossing, but as that distance was decreased objects upon the street within the lines of the railroad track were obscured by the tender from the view of those on the engine, but that point was so near to the street crossing that the engine could not be stopped,

going at a reasonable rate of speed, before it crossed the sixteen-foot pavement.

There is no evidence to support the theory that the employees of the Company willfully injured the child, and the charge of the court that the engine should not under the statute have been driven at a rate of speed greater than twelve miles per hour has no application to the situation. See Seaboard Air Line Ry. v. Tomberlin, 70 Fla. 435, 70 South. Rep. 437; Sec. 6592 C. G. L. 1927; Seaboard Air Line Ry. v. Smith, 53 Fla. 375, 43 South. Rep. 235.

The case of Claughton v. Atlantic Coast Line R. Co., 47 Fed. Rep. (2d) 679, is in no respect analogous to the case at bar.

The locomotive in the case before us was not being propelled at a high rate of speed, which from the evidence appeared to have been about fifteen or twenty miles per hour. The persons upon the engine did keep a lookout for objects upon the crossing. The whistle of the engine was blown, the bells rung to warn of its approach, and the flagman at the crossing discharged his full duty by waving flags to give notice of the engine's approach, and he was exonerated by the jury. The little girl stepped upon the track when the engine was so near to the crossing that she was not seen by those on the engine, and failed to be warned of its approach.

In these circumstances we are of the opinion that in view of the plea of not guilty the plaintiff failed to support her case, and the defendant showed that no negligent act of its employees was the cause of the unfortunate accident.

So the judgment is reversed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.