**SEABOARD AIR LINE R. CO. v. BAILEY.**

No. 13343.

United States Court of Appeals
Fifth Circuit.

July 9, 1951.

---

6. Florida Laws of 1943, Chapter 22079, Section 44.

Charles R. Scott, William L. Durden, Jacksonville, Fla., for appellant.

Charles Cook Howell, Jr., Jacksonville, Fla., Wilburn A. Cleveland, Jr., Jacksonville, Fla., J. Ollie Edmunds, Jacksonville, Fla., John Marshall Green, Ocala, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This appeal by the defendant railroad company is from a judgment awarding plaintiff damages for the death of her husband resulting from a collision between defendant's train and an automobile[1] driven by the deceased, of which the negligence of the defendant railroad company is alleged to be the proximate cause.

The collision occurred in Wildwood, Florida, at about 1:26 p. m. on December 30, 1948, a clear cool day, where the main line tracks of defendant and Oxford Street intersect at approximate right angles. At that point there are eight tracks running substantially north and south, the two easterly tracks being the northbound and southbound main line tracks. Immediately to the west of these are six switching and storage tracks. The deceased approached from the west on Oxford Street, proceeding east at right angles with, and across, the first seven tracks, colliding with a north-

---

1. A small station-wagon type, commonly called a "jeep,"—but not a regulation Army type jeep.

bound passenger train on the last or easternmost main line track. From the westerly rail of the westernmost switching track to the westerly rail of the northbound main line track, where the collision occurred, is 109 feet. There was a standard "cross arm" crossing sign 25 feet west of the westerly track. The operators of the train, and the deceased driving the automobile, each had an unobstructed view of the crossing, with which the deceased, and of course the train operators, were thoroughly familiar. The surrounding terrain is level.

As they approached the crossing, the train was traveling at about 18 to 25 miles per hour, the deceased's automobile at about the same speed. An instant before the collision deceased swerved his automobile sharply to the left, apparently in an effort to avoid a collision, but it was too late and the left front corner of the Diesel locomotive struck the automobile on its right door, just behind the right front fender. The train had whistled for the Oxford Street crossing, and the bell was ringing.

Sec. 768.05, Fla.Stat.1949, F.S.A., provides: "A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotives, or cars, or other machinery of such company * * * unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company."

The trial judge gave the jury the following charge, amongst others: "Now in this case, as in all similar cases, the burden is upon the plaintiff to prove its case by a fair preponderance of the evidence. And I might say in this case that, initially, when the plaintiff proves that the jeep was struck by a moving train of the defendant, 'that made out a statutory presumption of negligence against the defendant and she could then rest her case,' and that is what she did, as you will recall, in this case. Then it became the duty of the defendant to take over. But whenever the defendant introduced testimony that showed the plaintiff

was guilty of negligence in this case, and introduced testimony denying its own negligence, then the duty switches back to the plaintiff to come in with some other testimony, as you will recall the plaintiff did. So, if there has been any confusion in your minds as to why plaintiff did not offer all of this testimony in the beginning, I want to clear that up and let you know that the reason for that is that the law proceeds otherwise. It isn't the plaintiff's duty to go forward in the first instance, beyond merely showing this case arose out of a collision between a moving train and a moving automobile at a highway crossing; then she could rest and then it switched back to the defendant."

At the conclusion of the very comprehensive charge, requiring about thirty minutes to deliver, the following colloquy occurred:

"Mr. Scott, attorney for the defendant: Then there are two exceptions I would like to mention to Your Honor's charge and the first exception is with reference to that part of Your Honor's charge dealing with the statutory presumption of negligence, because the Supreme Court of Florida has held in Atlantic Coast Line against Bowles (Voss) that the giving of that charge to a jury was error and we request that the jury be told to disregard that, if Your Honor, please.

"The Court: That was an unfortunate statement on my part. If I have erred in that respect, I know that plaintiff's counsel will be delighted that I take it back.

"Mr. Howell, attorney for the plaintiff: While I am by no means sure that Your Honor has erred in that respect, still, to be on the safe side in that regard, I would like to join Mr. Scott in his request to Your Honor to suggest to the gentlemen of the jury that they disregard that part of the charge.

"The Court: Gentlemen, you will disregard that part of my charge where I talked about what all plaintiff had to do in the first part of the case. That is something like the ostrich that stuck his head in the sand, but we have to do that. Disregard what I have said."

 It was error to charge the jury that when the plaintiff proves that the "jeep" was struck by a moving train of the defendant, "that made out a statutory presumption of negligence against the defendant * * *." The presumption created by the statute above quoted is an administrative presumption which serves only to relieve the plaintiff from introducing proof of negligence in her case in chief, which would otherwise be necessary. As the presumption is not to be weighed as evidence,[2] the jury is not concerned with it. When the trial has reached the stage of charging the jury, the presumption has fully served its purpose, and has completely disappeared from the case. Van Allen v. Atlantic C. L. R. Co., 5 Cir., 109 F.2d 780.

 In at least three cases the Supreme Court of Florida has held that it is prejudicial error to make any reference whatever to the presumption in the court's charge to the jury. Atlantic Coast Line R. Co. v. Voss, 136 Fla. 32, 186 So. 199; Loftin v. Skelton, 152 Fla. 437, 12 So.2d 175; Powell v. American Sumatra Tobacco Co., 154 Fla. 227, 17 So.2d 391. In each of these cases it was held that the error could not be regarded as harmless. The two last named cases were reversed for this cause alone, while the Voss case was affirmed on condition of remittitur, under the comparative negligence rule.

In the Voss case, the Florida Supreme Court said: "In a controverted issue such as is presented here, when the plaintiff puts on his evidence to support his charge of negligence and forthwith the defendant responds with evidence showing that it exercised ordinary and reasonable care and diligence, the presumption is out of the picture and is as if it were never in the statute. If there are conflicts in the evidence, it becomes the duty of the jury to reconcile them and reach a verdict without any reference whatever to the presumption created by the statute. Any suggestion to the jury that it then exists is prejudicial." [136 Fla. 32, 186 So. 200.]

In Loftin v. Skelton, the same court said: "* * * it is error to make any reference whatever to the presumption." [152 Fla. 437, 12 So.2d 175.]

In the Powell case, the Court said: "We have heretofore said in the above cited opinions that the giving of the charge was calculated to improperly influence the jury."

 When it was called to his attention, the trial judge immediately realized that he should have omitted all reference to the presumption of negligence, and in an effort to correct it, he then instructed the jury "to disregard that part of my charge where I talked about what all the plaintiff had to do in the first part of the case." The latter charge, however, was inadequate to overcome the prejudicial effect of the original charge, which informed the jury that there is a presumption of negligence against the railroad company, a matter with which the jury is not concerned and which may easily lead an inexperienced juror to an incorrect appraisal of the burden which remains upon the plaintiff to establish her case by a preponderance of all the evidence. To the judge and attorneys the corrective charge may have been clear enough, but to a jury of laymen, wholly unfamiliar with the doctrine of presumption of negligence, it would be more confusing than enlightening. It also leaves to the determination of each individual juror just what portion of the original charge he will disregard.

 Where the trial court has given an erroneous instruction, it may be withdrawn so as to overcome error which otherwise might exist. But the withdrawal must leave no doubt in the minds of the jury as to what the court ultimately declares the law to be. To be effective, the correction must be clear and specific. Chicago, B. & Q. R. R. Co. v. Kelley, 8 Cir., 74 F.2d 80;

2. Western & Atlantic R. R. Co. v. Henderson, 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884; Atlantic Coast Line R. R. Co. v. Richardson, 117 Fla. 10, 157 So. 17; Kirch v. Atlantic Coast Line R. R. Co., 5 Cir., 38 F.2d 963; Atlantic Coast Line R. R. Co. v. Claughton, 5 Cir., 75 F.2d 626; Atlantic Coast Line R. R. Co. v. Voss, 136 Fla. 32, 186 So. 199.

Compare Mobile, J. & K. C. R. R. Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78; 32 L.R.A.,N.S., 226.

Louisville & N. R. R. Co. v. Johnson, 7 Cir., 81 F. 679; Atlantic Coast Line R. R. Co. v. Dixon, 5 Cir., 189 F.2d 525; Cummings v. Pennsylvania R. Co., 2 Cir., 45 F.2d 152; Powell v. American Sumatra Tobacco Co. (Fla.) supra. For the reasons stated, we are obliged to hold the charge prejudicial, and unremedied.

As the case must be re-tried, we will notice two other questions. Plaintiff offered, and there was received in evidence over defendant's objection, an ordinance of the City of Wildwood, providing, amongst other things, that "Every railroad company shall cause the bell on the engine to be rung before *crossing* any street in the City of Wildwood, (and) no train shall go *through* any of the traveled streets within the corporate limits of the City of Wildwood at a rate of speed faster than four miles per hour." (Italics supplied.) As the train here involved was traveling 18 to 25 miles per hour, violation of said ordinance was urged as a circumstance from which negligence might be inferred. Grand Trunk Ry. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485. Compare Allen v. Hooper, 126 Fla. 458, 171 So. 513. The defendant objected to the ordinance as inapplicable and therefore irrelevant, because the railroad tracks in question did not run longitudinally along Oxford Street, but crossed it at right angles, and hence did not run "through" it.

Sec. 2264, Fla.Rev.St.1892, now sec. 351.03, Fla.St.1949, F.S.A., provides that "In all incorporated cities and towns the said (railroad) companies shall cause the bell on the engine to be rung before *crossing* any of the streets of a city or town, and their trains shall not go faster, *through* any of the traveled streets of a city * * * than at the rate of four (now twelve) miles per hour." (Italics supplied). It will be noted that the statute and the ordinance are substantially verbatim, so similar, in fact, as to leave little doubt that the ordinance, enacted in 1925, was copied from the statute which was originally enacted in 1874. In 1907 the statute was construed by the Supreme Court of Florida in Seaboard Air Line R. R. Co. v. Smith, 53 Fla. 375, 43 So. 235, 238, where that court said of the language here under consideration: "This clause does not seem to be intended to fix a speed limit where a (railroad) track simply crosses a street, and is not located upon a street * * *. We think it was intended to fix a speed limit where a railroad track is located upon a traveled street, where the danger of injury to persons is greatest and where the greatest precautions are necessary." That interpretation was followed in Seaboard Air Line R. R. Co. v. Tomberlin, 1915, 70 Fla. 435, 70 So. 437, and both cases were cited with approval in Atlantic Coast Line R. R. Co. v. Canady, 122 Fla. 447, 165 So. 629. If the statute itself were under consideration here, the above construction would be binding upon us. Kirch v. Atlantic C. L. R. R. Co., 5 Cir., 38 F.2d 963.

When used, as here, as a preposition, the lexicographers define the word "through" to mean: "From end to end of, or from side to side of; from one surface or limit of, to the opposite; into at one point and out at the opposite, or another point."

As this is a diversity case, and the interpretation of the ordinance is a question of substantive law, in the interest of consistency of decision and without expressing an independent opinion of our own, we defer to the interpretation placed by the Florida Supreme Court upon the words "through * * * the traveled streets of a city", as found in the Florida statute regulating the speed of trains in cities and towns. As it adopts a permissible definition of the word "through," indeed the first preference of the lexicographers, we certainly can not say that interpretation is so clearly wrong that it should not be followed. For us to adopt an independent construction to the contrary, would not only be inharmonious with the rule in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, but would create an unfortunate anomaly in the Florida law, as both statute and ordinance were enacted under the state's police power, and relate to the same subject.

When the ordinance was adopted in 1925, the council was chargeable with knowledge of the interpretation placed upon the words "through any of the traveled streets of a city" in 1907 by the Supreme Court of Florida in construing the statute above mentioned, from which the ordinance is obviously copied. If the council meant "across" the streets of the city, it would have been quite simple to say so.

While we are mindful of the rule of statutory construction, here urged by plaintiff, which sometimes, depending upon context and purpose, sanctions a different meaning for the same word in different settings, Towne v. Eisner, 245 U.S. 418, 38 S.Ct. 158, 62 L.Ed. 372; Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S. Ct. 877, 94 L. Ed. 1194, we can see no justification for developing some tenuous distinction between the language used in the statute and the identical language used in the ordinance, thus producing a troublesome *hiatus* in the Florida law, when there is no compelling reason for divergent interpretations. Compare Merrill v. Fahs, 324 U.S. 308, 313, 65 S.Ct. 655, 89 L. Ed. 963, 967. Following the construction placed by the Supreme Court of Florida upon the same language in the statute, the ordinance was inapplicable to the crossing involved in this case, and should not have been admitted in evidence.

It was appropriate for the trial court to charge upon the doctrine of the last clear chance. We approve the charge as given. The fireman, sitting on the left in the cab of the Diesel locomotive, saw the deceased approaching when the locomotive was approximately 350 feet south of the crossing, within which distance the train could have been substantially slowed, if not stopped. The engineer testified that he stopped the train in 146 feet after the brakes were applied. Petroleum Carrier Co. v. Hall, 158 Fla. 549, 29 So.2d 624; Merchants' Transp. Co. v. Daniel, 109 Fla. 496, 149 So. 401. Compare Consumer's Lbr. & Veneer Co. v. Atlantic Coast Line R. R. Co., 5 Cir., 117 F.2d 329.

Reversed and remanded.