ROBERT D. LINN et al. *vs.* GEORGE W. BARKER et al.

Penobscot.   Opinion December 23, 1909.

*Negligence.   Fires.   Burden of Proof.   Evidence.   New Trial.*
*Verdict against Evidence.*

The burden is on one suing for damages caused by a fire communicated from defendant's premises to show defendant's negligence.

On moving for a new trial in a suit for negligently causing a fire, on the ground that a verdict for defendant was against the evidence, plaintiff must not only show a strong preponderance of evidence of negligence; but must show that there was no other reasonable inference from all the evidence on which the jury could act.

In the case at bar *held* that while the evidence showed that the fire was communicated from the defendants' premises, yet it was not sufficient to show that the loss was caused by the defendants'_negligence.

On motion by plaintiffs.   Overruled.

Action on the case to recover damages for the loss of the plaintiffs' buildings by fire and caused by the alleged negligence of the defendants.

The declaration is as follows :

"In a plea of the case, for that the said defendants on the 28th day of April, A. D. 1905, were occupying and running mills known as the Bodwell Water Power Company's mills, situated in said town of Milford ; and the plaintiffs aver that the defendants were using said mills for the manufacture of box boards and clapboards, and that there was adjacent to and west of said mills on the east bank of the Penobscot River a piece of land used by the said defendants as a common dump in said town of Milford, said mills and dump being located upon lands leased to the said defendants by the Bodwell Water Power Company, and situated on the east bank of said Penobscot River.   And the plaintiffs aver that the said defendants used said dump in common for the purpose of placing upon it the refuse from their said mills, and thereon burning the same, and on

the day and year last aforesaid the defendants were so using said dump for piling the refuse of said mills, separately used by the said defendants, thereon and burning the same.

"And the plaintiffs aver that whereas according to the law and custom of the land hitherto used and approved, every person, co-partnership or corporation is bound to keep his, their or its fire secure by day and by night so that no damage may accrue to his, their or its neighbors for want of good care of his, their or its fire.

"And the plaintiffs aver that they were on the day and year last aforesaid, and ever since have been, seized and possessed of a lot of land together with the buildings thereon situate in said town of Milford, on the westerly side of Davenport Street in said Milford, about two hundred (200) feet easterly from said mills and said dump used as aforesaid by the defendants.

"And the plaintiffs aver that the said defendants on said 28th day of April, 1905, at said Milford, did rashly and inconsiderately kindle a fire in a pile of refuse piled upon said dump located as aforesaid ; and the plaintiffs aver that there were around and about said dump and approximate thereto large piles of lumber belonging to said defendants and other people, and large piles of refuse which were dry and combustible, and the plaintiffs aver that the defendants took no precaution whatever to guard against the fire set by them on said dump on said day, and that they had no hose or men to guard against the spreading of said fire, and that notwithstanding all of which the said defendants did negligently and carelessly set said fire.

"And the plaintiffs aver that said defendants aforesaid wittingly kindled said fire on said dump and on land next adjoining to the plaintiffs' in said town of Milford, and at about the distance of two hundred (200) feet, more or less, from the plaintiffs' said land, and so negligently watched and tended said fire that the said fire came into the plaintiffs' said land and consumed their dwelling house, barn and buildings thereon situate of the value of thirty five hundred (3500) dollars, and personal property contained in said dwelling house, barn and buildings of the value of five hundred (500) dollars, all of which damage and injury to the property

of the plaintiffs was through the negligence and carelessness and want of due care on the part of the said defendants, and through no negligence and want of due care on the part of the plaintiffs.

"And the plaintiffs aver that on said day and year last aforesaid said defendant did negligently and carelessly set fire to a large pile of refuse piled by them on said dump as aforesaid, although being cautioned not so to do, and that then and there with full knowledge of the surrounding conditions, the velocity of the wind and the dryness of the combustibles around and about said dump, said defendants did negligently and carelessly set said fire as aforesaid, which spread from the dump behind the mills where it was set as aforesaid to the home of the plaintiffs as aforesaid, utterly destroying and burning the same to the ground, consisting of the dwelling house, barn and sheds, and most of the personal property therein contained, all of which is to the damage of the plaintiffs, as they say, in the sum of five thousand (5000) dollars.

"Yet though often requested, said defendants have not paid said sum, nor any part thereof, but neglect and refuse so to do, to the damage of said plaintiffs (as they say) the sum of five thousand dollars."

Plea, the general issue. Verdict for defendants. The plaintiffs then filed a general motion for a new trial.

The case is stated in the opinion.

*P. H. Gillin, and Harvey D. Eaton,* for plaintiffs.

*H. H. Patten, Louis C. Stearns, Louis C. Stearns, Jr., and W. H. Powell,* for defendants.

Sitting: Whitehouse, Savage, Peabody, Spear, Cornish, King, JJ.

Spear, J. In April, 1905, there were two saw mills on the east side of the Penobscot in the town of Milford owned by the Bodwell Water Power Company, one of which was rented to George W. Barker & Son, the defendants. From underneath these mills a small narrow guage railway track led out and down the east bank of the river for several hundred feet. Its object was to remove waste and it was equipped with several cars for that purpose operated by hand. For

300 or 400 feet at the south end of this railway ran a stone wall which was from four to six feet high on the west side, next the river, and by the steepness of the bank and perhaps some filling, was about even with the surface on the other side. This place was called the dump and the practice for more than thirty years had been to dump waste beside the track along this wall and burn it.

Immediately east of this dump and extending nearly a mile up and down the river, were large lumber yards or piling grounds, where in April, 1905, millions of feet of dry lumber were stuck in piles, some of them nearly thirty feet high. Between the dump and the lumber was a board fence about 200 feet long and fifty feet east of the dump.

Milford Village was located near these piling grounds, the main street running about 500 feet from the river. Shortly after three o'clock in the afternoon of April 28, 1905, a small blaze was discovered under the west end of the pile of boards in the west tier of piles next the west track and about 150 feet northerly from the dump. Mr. Barker, one of the defendants, had been burning waste from both mills, and had a fire then in the dump which was started about one o'clock. The fire which was discovered in a board pile spread to adjoining piles, burned a vast quantity of lumber and destroyed nearly all the little village.

The plaintiffs' residence was among those burned and they have brought this action to recover therefor. From the above statement of facts taken substantially from the plaintiffs' brief they seek to establish two propositions, (1) that the fire in the board pile caught from the dump; (2) that the defendants' negligence was responsible.

The jury found a verdict for the defendants and the plaintiffs filed the usual motion to set it aside.

We should have but little difficulty in determining that the fire was communicated from the dump to the board pile from which spread the conflagration that consumed the village. But the second proposition, the affirmative of which the plaintiffs are required to establish, presents a more troublesome question. The plaintiffs, upon motion, are compelled to present, not only a strong preponderance of evidence of the defendants' negligence, but must assume the

negative of showing that there was no other reasonable inference from all the evidence upon which the jury could act. The burden in this case is a heavy one and we are unable to say that the plaintiffs have sustained it. The determination of this question depends upon all the circumstances in the case, natural and artificial, as they existed and transpired on the 28th day of April, 1905. In view of the whole situation, then, were the jury warranted, if they believed the testimony and saw fit to draw the inference, in finding the following facts in favor of the defendants:

(1) Was the use of the dump, as it existed on the 28th day of April, an exercise of due care? It should be noted that all these matters are to be considered from the jury's point of view.

The evidence shows that a dump with these two mills was considered a necessity. This particular dump, in substantially the same condition as it was April 28, had been used for consuming the waste from these mills for thirty years. During this long period no fire had escaped, and the relation of the board piles to the dump, all these years, had been practically the same as on the day of the fire. From this evidence the dump could not be considered per se a nuisance. We are able to discover nothing in the physical condition of the dump to render its use such an act of negligence, as to require a reversal of the verdict upon this point.

(2) Was the fire sufficiently guarded? It appears that Mr. Barker, one of the defendants, watched the fire from the time it was set until it was discovered in the board pile, with the exception of a period of ten minutes when he was called away. The verdict finds the affirmative of this proposition and must stand.

(3) Were the defendants provided with sufficient men and fire apparatus in view of the duty devolving upon them to anticipate the possibility of fire? No question can be raised as to the adequacy of the number of men. The sufficiency of the hose becomes immaterial in this particular case as the evidence shows a complete want of pressure at the hydrant to which the hose were intended, in case of fire, to be attached. The want of pressure would have rendered any amount of hose useless. The defendants were not responsible for this failure.

(4) Were the weather conditions such, under all the circumstances that the exercise of due care forbid the use of the dump? In this inquiry appear the two vital questions in this case. (1) In view of the drought was it negligence to set the fire; (2) In view of the velocity of the wind at one o'clock p. m., did due care permit it?

(1) With respect to the arid conditions, the testimony shows that seven days before the fire there was a rain fall from eleven o'clock in the morning which continued into the night, and that, previous to this, during the month, there had been snow falls and showers. These facts taken in connection with the time of year, do not disclose such paramount evidence of drought as to warrant a disturbance of the verdict.

(2) The velocity of the wind at one o'clock, at and in the near vicinity of the dump, is the crucial test of due care or negligence in setting the fire. None of the other conditions were materially different from those upon a thousand days when this dump had been used. The only evidence upon this point is the record of the observation automatically registered at the weather bureau at Orono, five miles away, upon the top of a two story building. By this record the wind was blowing on the top of this building at the rate of 13 miles per hour. Abstractly we have but little idea of the breeze this velocity produces. But if we put it in the concrete form of the wind pressure, produced by driving a team or automobile at the speed of thirteen miles per hour, we can readily recall that it is but a gentle breeze. But the evidence is far from proving that the velocity of the wind at the dump was the same as that where the observation was taken. In fact the natural inference is that in a place, situated as these lumber yards and the dump were, the breeze would be impeded and the force of it much less than in an unobstructed place well up in the air. The testimony of the witnesses as to the velocity of the wind between three and four o'clock, after the fire had gotten under some headway, and may have created a draft of its own, was entitled to but little consideration as bearing upon the condition of the wind at one o'clock,

when the alleged negligent act of the defendants was performed. The court cannot say that the verdict upon this point is so clearly wrong as to require reversal.

We have examined this case with great care. What we deem to be the salient points we have briefly alluded to and find no profitable end to be subserved in a further analysis. Under our system of jurisprudence the verdicts of juries are entitled to their legal weight. Due regard for this rule entitles the present verdict to stand.

*Motion overruled.*