WEIS-PATTERSON LUMBER COMPANY v. JOHN KING, an insane person, a person adjudicated insane, by his Guardian, ADDIE WILSON KING.

177 So. 313.
Division A.
Opinion Filed November 27, 1937.
Rehearing Denied February 15, 1938.

344

*Watson & Pasco & Brown,* for Plaintiff in Error;

*Caro & Caro,* for Defendant in Error.

BUFORD, J.—This is the second appearance of this case here. See King v. Weis-Patterson Lumber Co., 124 Fla. 272, 168 Sou. 858.

The writ of error now brings for review a judgment in favor of the defendant in error based upon verdict rendered on the Fourth count of the declaration.

The declaration was in six counts. Count One was in the following language:

"1. That John King has been duly adjudicated to be insane by the County Judge's Court of Escambia County, Florida, and is still insane; that Addie Wilson King has been duly appointed by the County Judge's Court as guardian of the estate and property of the said John King, an insane person, and is now the duly appointed, acting and qualified guardian of the estate and property of the said John King.

"That on October 9, 1933, plaintiff owned and possessed real property in Escambia County, Florida, which is particularly described in Exhibit 'A' attached to this declaration, and hereby expressly incorporated in and made a part of this count; that on said real estate plaintiff owned and possessed a certain frame dwelling house, a filling station constructed of wood, which was attached to said dwelling, and a garage building constructed of sheet metal and wood, said property being used as a filling station, garage and dwelling; that on said premises were fences, tanks and other improvements; that on said real estate and in said building plaintiff owned and possessed certain property, to-wit: automotive equipment and supplies, household and kitchen furniture, fixtures, clothing, jewelry, personal effects and money.

"That at said time the defendant owned and operated in said county a large lumber yard and lumber mill, and thereon defendant owned and maintained a saw mill, planing mill, dry kiln, a number of lumber sheds constructed of wood, and particularly a large wooden frame shed known as shed number one, with lumber therein, gasoline storage tanks, and in said sheds and about said yard large quantities of dry lumber was stored, and about said premises from said mill, to said lumber sheds, and about the lumber yard the defendant maintained tramways constructed of wood, and a tramway extended through shed number one; and defendant operated about said premises and over said tramways near said lumber and in said lumber sheds, tractors powered by internal combustion gasoline motors; and on said premises, operated said mill by steam, generated by fire, and on said premises were boilers, smoke stacks, furnaces and mill machinery, used and to be used in connection with the operation of said mill.

"That plaintiff's property, as described aforesaid, in Exhibit 'A' was in close proximity to the said mill and yard of the defendant, and it was defendant's duty to the plaintiff to use reasonable care in the maintenance and operation of said mill and yard to prevent fire on or from defendant's premises, injuring plaintiff's property.

"That notwithstanding its duty to the plaintiff, defendant, its agents and servants, did carelessly and negligently permit to accumulate on said yard, near said lumber, and in said sheds, and under and near said tramway, and in the said shed number one, a large quantity of inflammable trash, consisting of small particles of wood, wood dust, saw dust, oil drippings, paper and dry grass, and as a proximate result of defendant's said negligence, fire originated on defendant's said premises, in and about shed number one, and in and near said tramway, and as a proximate re-

sult thereof, said fire spread over the defendant's yard and to the plaintiff's property, thereby damaging and destroying the following property of the plaintiff, to-wit: plaintiff's frame dwelling house, filling station and garage were completely destroyed; plaintiff's automobile, supplies and equipment, kitchen and household furniture and furnishings, jewelry, clothing, personal effects, glassware, crockery, money, stock of groceries and merchandise, in said building were all destroyed as a result of said fire, and plaintiff as a result of said fire, lost a large quantity of gasoline, greases and oils, and all of said property and damage was of the value of $2,999.00."

Count Two was in the same language except that it closed with the following allegations:

"That notwithstanding its duty to the plaintiff, the defendant did carelessly and negligently operate over said wooden tramways and into and through said shed number one, certain tractors powered by gasoline internal combustion engines, which were not equipped with muffler or any device to prevent fire, red hot metal, hot carbon, and ignited gasses passing from the exhaust thereof from coming in contact with said tramway, lumber and sheds and as a proximate result thereof, said tramway and shed was set on fire and said fire spread over defendant's yard, and to plaintiff's property, thereby damaging and destroying the following property of the plaintiff, to-wit: plaintiff's frame dwelling house, filling station and garage, were completely destroyed; plaintiff's automobile, supplies and equipment, kitchen and household furniture and furnishings, jewelry, clothing, personal effects, glassware, crockery, money, stock of groceries and merchandise, in said building, were all destroyed as a result of said fire, and plaintiff as a result of said fire, lost a large quantity of gasoline, greases and oils, and all of said property and damage was of the value of $2,999.00."

Count Three was in like language, except that it closed with the following allegation:

"That notwithstanding its duty to the plaintiff, defendant was guilty of the following negligence, to-wit:

"Defendant permitted inflammable trash consisting of saw dust, wood dust and splinters to accumulate in and under said tramway, in and about shed number one, and under said tramway in shed number one, and operated through shed number one, over said tramway a tractor powered by a gasoline internal combustion engine, which was not equipped with muffler or any device to prevent fire, red hot metal, hot carbon, and ignited gas passing from the exhaust of said tractor, from coming in contact with said tram, the trash thereunder and lumber in said shed; and as a proximate result of said negligence, said trash, tramway, lumber and shed number one was fired, and said fire spread over and about defendant's yard and to the plaintiff's property thereby damaging and destroying the following property of the plaintiff, to-wit: plaintiff's frame dwelling house, filling station and garage were completely destroyed; plaintiff's automobile, supplies and equipment, kitchen and household furniture and furnishings, jewelry, clothing, personal effects, glassware, crockery, money, stock of groceries and merchandise in said building were all destroyed as a result of said fire, and plaintiff as a result of said fire lost a large quantity of gasoline, greases and oils, and all of said property and damage was of the value of $2,999.00."

Count Four was in like language except that it closed with the following allegation:

"That plaintiff's property, as described aforesaid, in Exhibit 'A,' was in close proximity to the said mill and yard of the defendant, and it was the defendant's duty to use reasonable care to prevent fire and the spread of fire on

defendant's premises by diligently and promptly searching for and preventing, extinguishing, suppressing and controlling the same, in order that plaintiff's property be not injured thereby; that notwithstanding its duty, on October 9th, 1933, fire occurred on defendant's premises in and near shed number one and defendant did carelessly and negligently fail to prevent fire and the spread of fire on defendant's said premises, in this, to-wit: defendant, its agents and servants, did carelessly and negligently fail to make diligent and prompt search for said fire and did carelessly and negligently fail to make reasonable effort to prevent, extinguish, suppress and control said fire, and as a proximate result of defendant's negligence, fire spread over defendant's premises, and to the plaintiff's property, thereby burning and destroying the following property of the plaintiff, to-wit: plaintiff's frame dwelling house, filling station and garage were completely destroyed: plaintiff's automobile, supplies and equipment, kitchen and household furniture and furnishings, jewelry, clothing, personal effects, glassware, crockery, money, stock of groceries and merchandise, in said building, were all destroyed as a result of said fire, and plaintiff as a result of said fire, lost a large quantity of gasoline, greases and oils, and all of said property and damage was of the value of $2,999.00."

Count Five was in like language, except that it closed with the following allegation:

"That plaintiff's property, as described aforesaid, in Exhibit 'A,' was in close proximity to the said mill and yard of the defendant, and it was the duty of the defendant to use reasonable care to provide its mill and lumber yard with reasonably proper and necessary fire fighting equipment and appliances, and to keep the same in reasonably proper operating condition, so that fire should not be communicated

from defendant's said mill and lumber yard to the property of the plaintiff.

"Yet the defendant, not regarding its duty in this behalf, did carelessly and negligently fail to provide its mill and lumber yard with proper and necessary fire fighting appliances and equipment, and to keep the same in reasonably proper operating condition, and as a proximate result of said negligence of the defendant, on October 9th, 1933, defendant's sheds, tramways and lumber on said yard, were negligently caused and permitted to burn, and by reason thereof, fire was communicated to the property of plaintiff, thereby burning and destroying the following property of the plaintiff, to-wit: plaintiff's frame dwelling house, filling station and garage were completely destroyed; plaintiff's automobile, supplies and equipment, kitchen and household furniture and furnishings, jewelry, clothing, personal effects, glassware, crockery, money, stock of groceries and merchandise, in said building, were all destroyed as a result of said fire, and plaintiff as a result of said fire, lost a large quantity of gasoline, greases and oils and all of said property and damage was of the value of $2,999.00."

And, Count Six was in like language except that it closed with the following allegation:

"And it was the duty of the defendant to use reasonable care to provide its mill and lumber yard with reasonably proper and necessary fire fighting equipment and appliances, and to keep the same in reasonably proper operating condition, so that fire should not be communicated from defendant's said mill and lumber yard to the property of the plaintiff.

"Yet, the defendant, not regarding its duty in this behalf, did carelessly and negligently fail to provide its mill and lumber yard with proper and necessary fire fighting appliances and equipment, and to keep the same in reasonably

proper operating condition, in this, that the pumps and pumping machinery was not in reasonably proper operating condition, and the said yard and mill did not have sufficient supply of water in the water tank, and as a proximate result of said negligence of the defendant, on October 9th, 1933, defendant's sheds, tramways and lumber on said yard, were negligently caused and permitted to burn, and by reason thereof, fire was communicated to the property of plaintiff, thereby burning and destroying the following property of the plaintiff, to-wit: plaintiff's frame dwelling house, filling station and garage were completely destroyed; plaintiff's automobile, supplies and equipment, kitchen and household furniture and furnishings, jewelry, clothing, personal effects, glassware, crockery, money, stock of groceries and merchandise, in said building, were all destroyed as a result of said fire, and plaintiff as a result of said fire lost a large quantity of gasoline, greases and oils and all of said property and damage was of the value of $2,999.00."

Demurrer to the declaration was interposed and overruled. The defendant pleaded not guilty to each and all counts of the declaration and filed a second plea alleging that the loss of plaintiff was covered by insurance. The latter plea is of no consequence here.

The jury was instructed to and did return verdict in favor of the defendant under Counts One, Five and Six.

The First Count of the declaration alleged in effect, that the defendant was negligent in that it allowed trash to accumulate on its lumber yard and that this negligence was the proximate cause of the fire and that by reason of the accumulation of trash and its having been ignited the fire spread to the property of the plaintiff. When the evidence had been introduced the trial judge instructed the jury to find for the defendant on this count.

The Second Count alleged, in effect, that defendant was negligent in that it permitted its tractors to be operated on its lumber yard without having mufflers and that sparks from the tractors ignited the trash and the fire spread. The issue presented by this count of the declaration and the plea was submitted to the jury and the jury found against the plaintiff thereon.

The Third Count alleged, in effect, that the defendant negligently allowed trash to accumulate on its premises and that the fire was set thereto by its tractors and allowed to spread to plaintiff's property. The issue presented by this count and the plea of not guilty thereto was submitted to the jury and the jury found in favor of the defendant.

The Fifth Count charged in effect that the defendant was negligent in not providing its mill and lumber yard with reasonably proper and necessary fire fighting equipment and appliances and did not keep the same in reasonably proper operating condition so as to prevent fire spreading to the plaintiff's property and that by reason thereof the fire did spread to and destroy plaintiff's property. The Sixth Count, to all intents and purposes, alleged the same sort of negligence, with the same result. The trial court instructed the jury to return a verdict in favor of the defendant on these two counts, which was done.

The Fourth Count under which the jury returned verdict in favor of the plaintiff, alleged in effect that the fire occurred on defendant's premises in and near shed number one and defendant did carelessly and negligently fail to prevent fire and the spread of fire on defendant's said premises, in this, to-wit: "defendant, its agents and servants, did carelessly and negligently fail to make diligent and prompt search for said fire and did carelessly and negligently fail to make reasonable effort to prevent, extinguish, suppress and control said fire, and as proximate result of defendant's

negligence, fire spread over defendant's premises and to plaintiff's property, thereby burning and destroying," etc.

So it is that the jury by its verdict as to counts, One, Two, Three, Five and Six found defendant not guilty of having in any manner suggested in the counts of declaration negligently caused or permitted the fire to start. In other words, by the verdict the jury had exonerated the defendant from any negligence as alleged in the declaration in connection with the origin of the fire but, by its verdict, held the defendant to be guilty of actionable negligence upon the theory that the defendant, its agents and servants did carelessly and negligently fail to make diligent and prompt search for the said fire and that it failed to make reasonable effort to prevent, extinguish, suppress and control said fire; and, as a proximate result of said negligence, the fire spread over defendant's premises and to plaintiff's property.

The record shows that on the afternoon of October 9, 1933, two laborers, employees of the defendant, working in lumber shed number one referred to, thought they smelled smoke, which they probably did. These two laborers were introduced by the plaintiff and testified that when they detected what they believed to be the odor of smoke they proceeded to search the shed thoroughly to find the origin of the smoke. They testified that they not only went through the shed, but that they got down on their hands and knees and crawled, looking under open spaces where a fire could probably start, and that they continued to look for the origin of the smoke until time to knock off work; that they then went to the commissary and advised the man in charge that they had thought they detected the odor of smoke in that shed, but that they had been unable to find any fire. This employee of defendant to whom these laborers reported, immediately told the night watchman and he went

to the shed, entered it and made a search to ascertain whether or not there was any fire in the shed and found none. Nevertheless, fire was evidently there somewhere, because about nine o'clock that night fire broke out, consumed the lumber shed and other property of defendant and spread to and destroyed the property of the plaintiff.

The question presented is whether or not the agents and servants of defendant exercised reasonable diligence in their effort to locate the origin of the smoke which they at one time detected in the afternoon.

We are cognizant that the rule well established is as stated in the case of W. C. & P. R. R. Co. v. McElwee, 67 Pa. St. 311:

"The law is well settled that what is and what is not negligence in a particular case is generally a question for the jury and not for the court. It is always a question for the jury when the measure of duty is ordinary and reasonable care. In such cases the standard of duty is not fixed but variable. Under some circumstances, a higher degree of care is demanded than under others. And when the standard shifts with the circumstances of the case, it is in its very nature incapable of being determined as matter of law, and must be submitted to the jury to determine what it is, and whether it has been complied with. But when the standard is fixed, when the measure of duty is defined by the law, and is the same under all circumstances, its omission is negligence and may be so declared by the court. And so, when there is such an obvious disregard of duty and safety as amounts to misconduct, the court may declare it to be negligence as matter of law. But where the measure of duty is not unvarying, where a higher degree of care is demanded under some circumstances than under others; where both the duty and the extent of its per-

formance are to be ascertained as facts, a jury alone can determine what is negligence, and whether it has been proved."

These principles were recognized by this Court in the case of Cobb v. Twitchell, 91 Fla. 539, 108 Sou. 186, but in that case we held:

"The degree of care required to be used in any given case to avoid the imputation of negligence must be according to the circumstances or in proportion to the danger reasonably to be anticipated; such care as is ordinarily sufficient under similar circumstances to avoid danger and secure safety."

This case is to be differentiated from the case of Cobb v. Twitchell, however, because there it was shown that the defendant set out the fire and then failed to control it. Here the defendant did not set out the fire and the jury exonerated it from any negligent responsibility for its existence. We recognize the fact that under the issues presented the question for the jury to determine was whether or not the defendant, its agents and servants, having discovered that there was fire somewhere in or about the lumber shed used all reasonable care and diligence which an ordinarily prudent person would have used in the effort to discover the fire, that it might be extinguished before getting under headway. When the agents and servants of defendant were impressed that they smelled smoke they did not disregard that warning, but immediately searched for its origin. They not only searched until time to quit work, which was probably a short time, but the record shows that these men made a careful search.

There is no material difference between the statements given by the two witnesses. Mr. Jernigan testified as to the salient facts, as follows:

"Mr. Whitehead and I searched practically the entire length of the shed, about 500 feet, for the smoke. Mr. Whitehead and I were outside of the shed when Mr. Dan Babb's tractor went into the shed between four and five o'clock in the afternoon. We were at the east end of the shed. The tractor went about midway, about the middoor; there is a door about the middle of the shed on the north side. The tractor went opposite that door, then came out. The tractor was not in there but about five minutes. Afterwards Mr. Whitehead and I went in to close up the building around five o'clock. We first closed up the side door and walked back to close up the rear door. In going back to the rear portion from the center of the shed back towards the west end, we thought we smelled smoke. We both searched for it. Then we went outside on the west end of the shed, out the back door for about ten or twelve feet to the edge of the tramway. We did not smell smoke outside. We couldn't smell anything outside the shed, but smelled it inside. We came back in the shed and searched the entire length of the building all the way back. We got down on our knees and searched. We looked all along the tramway. We did not see any smoke coming from under the tramway. The tramway lies the entire length of the building, east and west. It is about fourteen or sixteen feet wide. The tractor, in coming in and out, would stay on the tramway. We searched that entire tramway, Mr. Whitehead and I, and got down on our knees and looked through the cracks and saw no smoke or evidence of smoke. We then went out and closed the front door. We didn't go back and make a second search. I walked straight from the shed and Mr. Whitehead did, too. After we shut the door, the back door next to the planing mill, I went straight out to the car, and Mr. Whitehead delivered the keys."

Whitehead's testimony corroborated Jernigan's.

Mitchell, night watchman, testified as follows:

"I was in the yard office at the time Mr. Fred Whitehead came in to knock off. Mr. Julian Patterson and Mr. Mahlon Weis and several others were in there at the time. I do not know who they were. Mr. Whitehead came in and told Mr. Julian Patterson that he smelled the odor of smoke in shed number one. Mr. Julian Patterson instructed me to investigate the matter and keep an eye on shed No. 1. Neither Mr. Patterson nor Mr. Mahlon Weis went to the shed. Nobody went that I know of. At about a quarter past five I first went into the shed. I did not smell any smoke on the outside of the shed before I opened the door. I did not notice any smell of smoke when I got inside of the shed. While going through the shed I smelled the odor of smoke way down toward the west end of the shed after I crossed the cross alley. I cannot tell with any certainty the exact spot where I first smelled it. I opened up the back door, the west door, and the smoke like that—I smelled smoke just as strong on the outside as on the inside. I made a thorough investigation of the smoke as thorough as I could. I got down on the tram and took my light and searched in between the cracks. I got down on my hands and knees and took in my hands a flash light. I did not have a piece of bark or stick or anything like that. 1 was looking for fire. I looked to see if I could find any of that kind as it was reported. I looked in the places where I thought it most likely to find the cause of smoke. I was in there some twenty or thirty minutes. The same smell of smoke was still in there when I left the shed. There was no electric current on in the shed. I went in the shed a second time to be positive that there was no fire in the shed. I was watching the Sunday night before, but did not go in

the shed that night.  I did not go on Friday night before. On Monday night I went in the shed twice before the fire. I believe it was eight o'clock the second time.  I entered the east door both times.  I smelled the same odor of smoke that I had the first time, way down toward the west end. The first place I noticed it was way down toward the west door.  I didn't notice it about the middle of the building. I could not say just how many feet from the west end I smelled it.  I opened the door and went back and could still smell it.  I could not estimate how many feet down the shed I could smell the smoke.  That scent of smoke that I could smell was just as strong in one place as in another. The scent of smoke was in the lower end of the shed.  I could smell it even on the outside after I got on the outside. I didn't poke any stick under the tramway.  I flashed my light on the tramway outside.  The tramway was only 16 feet from the door to the fence—from the outside of the door to the fence.  I would say within 16 feet of the door when I could smell the smoke outside.  When I left the building the second time I locked the door and the electric lights were off.  Ten minutes after nine o'clock I discovered the fire.  At that time I was at the planing mill.  The planing mill is about 500 feet from shed No. 1.  There are racks of lumber about twelve or fourteen feet high between the planing mill and shed No. 1.  When I first saw the fire I was at the planing mill, and I saw the blaze bursting out through the top of the shed window.  When I first saw it the blaze was a pretty good size fire.  I could see it bursting through the top.  There was a flat top and I saw it breaking through the top of the shed."

This is not all of the testimony of the witness, but it is all that has any material bearing on the issues made.

We hold that under the established rules of law in such

cases the evidence was not sufficient to constitute a basis for recovery under the allegation of the Fourth count of the declaration. Aside from this, evidence is lacking in sufficiency to establish the allegations that defendant, its agents and servants, "carelessly and negligently failed to make reasonable effort to * * * extinguish, suppress and control said fire." Without these allegations the Fourth count would have stated no cause of action.

We conceive the rule to be in cases where one seeks to recover for damages sustained by fire spreading from the premises of another to and destroying the property of the claimant the liability in the absence of contrary controlling statute, depends upon the existence of (1) negligence in the origin of the fire, or (2) negligence in regard to its control after it has been started or (3) under some circumstances in failing to provide means for its extinguishment. Orander v. Stafford, 98 W. Va. 499, 120 S. E. 330.

In City of Denver v. Porter, 126 Fed. 288, it was held:

"The rule which now prevails, in the absence of special regulation by statute, is that liability depends upon the existence of negligence in the origin of the fire, or in its control after it has been started, or in some special cases in failing to provide means for its extinguishment. Without negligent act or omission, there can be no responsibility for the ensuing damage. Negligence in such cases is the gist of the action, and it is not presumed but must be affirmatively alleged and proved."

In support of this, the following authorities were cited:

"Musselwhite v. Receivers, 4 Hughes 166, Fed. Cas. No. 9,972; World's Columbian Exposition Co. v. Republic of France, 91 Fed. 64, 33 C. C. A. 333; Bock v. Grooms (Neb.) 92 N. W. 603; Vansyoc v. Cemetery Ass'n (Neb.) 88 N. W. 162; Planter's Warehouse & Compress Co. v.

Taylor, 64 Ark. 307, 42 S. W. 279; Sweeney v. Merrill, 38 Kan. 216, 16 Pac. 454, 5 Am. St. Rep. 734; McNally v. Colwell, 91 Mich. 529, 52 N. W. 70, 30 Am. St. Rep. 494; Callahan v. Railway Co., 23 Iowa 562; Catton v. Nichols, 81 Mo. 80, 51 Am. Rep. 222."

These authorities will be found to support the text.

The Fourth Count of the declaration did not charge that the defendant was responsible for setting the fire. Therefore, the plaintiff, to recover under this count, must be held to that burden of proof required in cases of accidental fire. It appears to be well settled that if one doing a lawful act and using due care, causes a fire to start accidentally on his premises, he is not liable for damage done by it spreading to other property, in the absence of some negligence on his part to prevent its spread. Poe v. Southern R. Co. (1916) 196 Ala. 103, 71 So. 997; Burbank v. Bethel Steam Mill Co., 75 Me. 373, 46 Am. Rep. 400; Linn v. Barker, 106 Me. 339, 76 Atl. 700, 20 Ann. Cas. 697; Mitchell v. Reitchick, 123 Me. 30, 121 Atl. 91; Reid v. Pennsylvania R. Co., 44 N. J. L. 280; Clark v. Foot, 8 Johns. 421; Consulich v. Standard Oil Co., 122 N. Y. 118, 19 Am. St. Rep. 475, 25 N. E. 259; Fowle v. Atlantic Coast Line R. Co., 147 N. C. 491, 61 S. E. 262; Aman v. Rowland Lumber Co., 160 N. C. 369, 75 S. E. 931; Eastman v. Jennings-McRae Logging Co., 69 Or. 1, 138 Pac. 216, Ann. Cas. 1916A, 195; Johnson v. Jennings-McRae Logging Co., 70 Or. 16, 138 Pac. 236. Compare Brown v. South Carolina Midland R. Co. (1903) 67 S. E. 481, 100 Am. St. Rep. 756, 46 S. E. 283. Collins v. George (1904) 102 Va. 509, 46 S. E. 684; Rylander v. Laursen (1905) 124 Wis. 2, 102 N. W. 341."

It is contended by the plaintiff in error that the defendant, having moved the court to enter judgment in favor of de-

fendant after the jury had returned a verdict in favor of plaintiff on the Fourth Count, defendant was entitled to have such judgment entered upon the theory that the evidence was not sufficient to sustain verdict on the Fourth Count. If the court had granted the motion it would necessarily have been equivalent to the entry of a judgment *non obstante veredicto*. We have held:

"At common law, motion for judgment, notwithstanding verdict, could not be entered for defendant and could be invoked in plaintiff's behalf only where plea confessed cause of action but set up insufficient matters of defense in avoidance, although such matters were true." A. C. L. R. R. Co. v. Canady, 122 Fla. 447, 165 Sou. 629.

This rule has been relaxed in this State where plea setting up meritorious defense has been duly sustained and not met by plaintiff or where declaration fails to state a cause of action but verdict is found in plaintiff's favor. A. C. L. R. R. Co. v. Canady, a minor, *supra*.

In Dudley v. Marrison McCready & Co., 127 Fla. 687, 173 Sou. 820, we said:

"At common law the scope of this motion for judgment *non obstante veredicto* was a narrow one. Nor do we really need to widen it; for, with our motions for affirmative charges, and for instructed verdicts, and our motions for new trial, all questions based on evidence in a case, or the lack of it, can be readily tested and remedied; and by our system for settling the form and sufficiency of pleadings before trial; and our liberal statute as to amendments, even during the trial, and our motions for allowance of repleader in proper cases, and our motions for judgment *non obstante veredicto* on common law grounds, and motions in arrest of judgment, all material insufficiencies or fatal de-

fects in pleadings can easily be remedied without widening the scope of judgments *non obstante veredicto.*

"Now at common law, only a plaintiff could make a motion for judgment *non obstante veredicto,* and then only when the defendant's plea confessed the cause of action and set up matters in avoidance which were insufficient, although found true, to constitute either a defense or a bar to the action. "The motion was founded entirely upon the face of the pleadings; never upon the evidence. Where plaintiff's pleadings would not support a judgment upon a verdict in his favor, defendant's remedy was by motion in arrest of judgment. Saunders on Pldg, & Evidence, Vol. 2, 766, 767. Shinn's Pleading & Practice, Vol. 2, Sec. 984; Andrews' Stephen on Pleading (2d ed.) Sec. 127; Crandall's Fla. Common Law Prac., Sec. 490; 33 C. J. 1178, *et seq.;* 15 R. C. L. 606, *et seq.;* 11 Encyc. Pldg. & Prac. 912, *et seq.;* Note 12 L. R. A. (N. S.) 1021; Gregory v. McNealey, 12 Fla. 578; Hyer v. Vaughn, 18 Fla. 647; Peoples Nat'l Bank v. Magruder, 77 Fla. 235, 81 So. 440; Slocum v. N. Y. Life Ins. Co., 228 U. S. 364, 57 L. Ed. 879."

And we also said:

"Assuming for the sake of argument that this Court has the power, without legislative action, to change the common law rules on this subject, and to hold that a judgment notwithstanding the verdict can properly be entered in favor of the defendant where the trial court is of the opinion that the evidence fully proves one or more of the defendant's pleas in bar, we would not be justified in doing so, because to so hold would be an unwarranted impairment of the right of trial by jury."

In this case the plea of not guilty set up a plea of meritorious defense. The plea was sustained as to the Fourth

Count of the declaration and was not sufficiently met by plaintiff. So, the motion of the defendant for new trial should have prevailed.

The judgment is reversed and the cause remanded for new trial.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and CHAPMAN, J., concur in the opinion and judgment.

BROWN, J., concurs in the conclusion.