**ATLANTIC COAST LINE RAILROAD COMPANY**

v.

**L. M. WHITE and L. M. White Construction Company.**

**No. 15250.**

United States Court of Appeals
Fifth Circuit.

May 13, 1955.

Wm. M. Howell, Howell & Howell, Jacksonville, Fla., for appellant Atlantic Coast Line R. Co.

Neal Rutledge, Jordan Bittel, Earl Faircloth, Miami, Fla., S. Gordon Blalock, Jacksonville, Fla., Claude Pepper Law Offices, Miami, Fla., Boggs, Blalock & Holbrook, Jacksonville, Fla., for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The narrow question involved in this appeal is whether, in a collision between a freight train and a heavy dirt moving machine at a temporary crossing, the railroad was guilty of any negligence contributing to the damage inflicted on the dirt mover. The District Court submitted to the jury the mutual claims asserted by the respective parties, declining to direct a verdict in favor of the railroad, and the jury rejected the railroad's claim and awarded reduced damages to the owner of the dirt mover. The sole issue here is whether the District Court should have directed a verdict in favor of the railroad on the claim which was the basis of those damages.

The facts as settled by the jury verdict are these: the Florida State Road Department desired to relocate a grade crossing of one of its highways across the tracks and right-of-way of Appellant, Atlantic Coast Line Railroad Company (railroad) and employed Appellees, L. M. White and L. M. White Construction Company (White) to do the grading incident to the change. One of the purposes was to relocate a passing track of the railroad so that the new highway would have only one track to cross. The railroad concluded that it would use the occasion to lengthen the passing track which would be moved.

Prior to beginning the grading work, officials of the Road Department, the Railroad and White met to discuss the details. It was found that the grading operation would yield considerable excess dirt, and the Railroad desired that this dirt be spread by White on both sides of its track to bring low places up to grade. The railroad track ran north and south, the dirt to be moved was on the west side, and the distribution of that dirt was to be made on both sides of the track. This necessitated the construction of a temporary crossing which White accomplished by filling in with dirt between and alongside the rails. All parties realized that a hazard would be created by the necessity that the dirt moving equipment cross back and forth over the main line and the passing track of the railroad, and they discussed the precautions which would be taken. The railroad gave assurance that a flagman would be provided to protect these movements but no flagman was ever provided.

The equipment used for moving the dirt was a large caterpillar tractor, rubber-mounted and powered by a diesel motor, which dragged behind it a large

pan (pan) holding about twelve cubic yards of dirt. Several of these machines were in operation, and all parties knew the kind of equipment which would be used on the job. The accident happened the day after the work was begun and after each of the operators of the pans had made a number of trips across the temporary crossing.

The Railroad did not put out a bulletin or otherwise advise its train crews that the crossing had been established or that this work was in progress. The collision occurred between a pan being operated across the temporary crossing from west to east and a heavily loaded freight train moving north along the main line. The pan had to pass over the passing track and traverse the intervening space of substantially 11 feet 3½ inches before reaching the main line. The night before the collision, the Railroad had placed nine cars on this passing track which cut of cars extended to a point about 250 feet south of the temporary crossing. Photographs of the scene of the accident taken with the oral testimony demonstrated that a pan operator could see the approaching train for a distance of about 1500 feet from the center of the passing track; and the view for a distance of probably a mile was unobstructed from a point halfway between the two tracks.

The pan which came into collision with the engine had moved south along the west side of the track a distance of nearly 400 feet, (at which time the driver was facing the oncoming train), and had then made a left turn and proceeded about fifty feet to the main track on which the accident occurred. An outside witness had attempted to warn the driver of the pan of the oncoming train but the evidence does not show whether the driver comprehended the signal or not. The pan was operated onto the track without stopping, and the driver jumped off before the collision. One witness testified that the pan had been brought to a stop when hit but the fireman thought it was still moving.

The freight train was being operated at a speed of about thirty-seven miles per hour, which was the normal speed for that point. Neither the engineer nor the fireman knew that the grading work was in progress or that there was a crossing at that point but both were keeping their customary lookout. A few feet before the engine emerged from behind the cars on the passing track, both the fireman and the engineer saw the approaching pan, and the brakes were immediately applied in emergency but had hardly taken effect when the impact occurred. The railroad had not provided the flagman it had agreed to furnish and had not notified the train crew of the hazard existing at that point, and the train operatives had not attempted to give any signal approaching the point or to reduce the speed and had done nothing else until the peril of the pan was discovered.

The resulting impact derailed and damaged the train and greatly damaged the pan and took it out of service for many days. The parties agreed to the damages respectively sustained by them and, in this action, each sought to recover damages from the other. The jury rejected the Railroad's claim and reduced White's claim by 45% to compensate for the pan-driver's admitted negligence, returning a verdict for 55% of White's stipulated damage.

The sole error assigned by the Railroad is that the proof failed to show that it was negligent in any respect and that the court below erred in not sustaining its motion for a directed verdict. It argues earnestly here that the record is barren of any proof from which the jury could have found that the Railroad was negligent in the various particulars charged,—speed, lookout, signals, obstructed view and absence of flagman. We are unable to follow this argument because it ignores proven facts which laid upon the Railroad special duties in the observance of reasonable care under the peculiar circumstances applying at the time of the accident.

It may be granted that the placing of cars 250 feet south of the temporary

crossing was not a negligent act in itself but it cannot be argued that these cars did not in fact obstruct the view both of the enginemen and of the operator of the pan thus laying a heavier duty upon both. We would not be disposed to dispute the claim that a speed of thirty-seven miles per hour was proper at that point if it were not for the admitted fact that the railroad knew that these ponderous pans would be crossing its track at that point, and that they were unwieldy and could not be easily maneuvered or stopped; and that there was evidence that it had promised to flag these pans across its tracks, and yet had failed to provide a flagman or to notify its train crews of this situation which it was at pains to prove held unusual hazard.

Appellee argues that, with knowledge of these conditions, reasonable care required that the Railroad either put out a slow order or remove the obstructions from the view between the railroad and the pan or require the giving of whistle or bell signals or provide a flagman to chaperone the pan across its track or to take all of these precautions. The Railroad took no added precautions at all to meet what it admitted to be an increased danger.

It seeks to escape the duty it had undertaken to furnish a flagman by pointing out that the pan operators knew that no flagman had been provided; it seeks to escape the duty to give a signal with its whistle or horn by arguing that such a signal would have been useless because the pan operators could not have heard it. This latter contention is not borne out by the proof. There was testimony that the pans were noisy, and that the usual noise of an approaching train would be drowned out. But nobody testified that a seasonable blowing of the horn would not have been heard. Indeed, common sense teaches that a shrill noise of that character would probably have been audible to the pan operators. We are unable to grasp the force of the Railroad's argument that this unusual hazard resulting from its own agreement and in furtherance of its own ends did not place upon the Railroad the duty of added care. In any event, a question for the jury was presented under the clear holdings of this Court and of the Supreme Court of Florida.[1]

It is pertinent to add that the theories of liability which the Railroad seeks to repudiate here were not challenged when they were enunciated in the Court's charge to the jury. The District Judge held an extensive conference with counsel before the arguments were begun and stated that it was his purpose to charge the jury that the pan operator was crossing the track with the same rights, duties and responsibilities as would have applied to a member of the public at a public crossing, and that the actions of the parties would be submitted to the jury in the light of the absence of flagman, the presence of the cars on the passing track and the other facts and circumstances surrounding this operation which was being undertaken for the common benefit of the parties.

And the Court charged the jury that the pan operator was a business invitee of the Railroad Company having the right to assume that the Railroad would give adequate and timely warning of the approach of its trains, and that the enginemen would keep a proper lookout and give proper warning signals with horn or bell as the train approached. The Railroad took no exception and raised no objection to the submission of the case to the jury in a charge embodying those elements of negligence. The Railroad evidently conceded the correctness of the legal principles it now seeks to repudiate. We think its first attitude was the correct one, and that the case was properly submitted to the jury.

Finding no reversible error in the record, the judgment is

Affirmed.

1. Woodward v. Atlantic Coast Line Railroad, 5 Cir., 1932, 57 F.2d 1019; Lowry v. Seaboard Airline Railroad Co., 5 Cir., 1949, 171 F.2d 625; Weis-Patterson Lbr. Co. v. King, 131 Fla. 342, 177 So. 313.