477 So.2d 1036 (1985)
Morty MARKS, As Personal Representative of the Estate of Michael Marks, Deceased, and On Behalf of Morty Marks, Individually, Appellant,
v.
Richard MANDEL, M.D., Paul Baum, Ira Bloomfield, M.D., P.A., Palmetto General Hospital, Florida Patients' Compensation Fund and Allstate Insurance Company, Appellees.
Nos. 83-2803, 83-2906.
District Court of Appeal of Florida, Third District.
October 22, 1985.
Rehearing Denied November 20, 1985.
*1037 Cohen & Cohen, Miami Beach, Greene & Cooper and Joan M. Bolotin, Miami, for appellant.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and James C. Blecke, Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern and John W. Wylie, Adams, Hunter, Angones & Adams and Christopher Lynch, Daniels & Hicks and Elizabeth K. Clarke, George, Hartz, Burt & Lundeen, Miami, for appellees.
Before HENDRY, NESBITT and BASKIN, JJ.
PER CURIAM.
This is an appeal by Morty Marks, as personal representative of the estate of his son, Michael Marks, from a final judgment entered upon an adverse jury verdict. We affirm the directed verdict in favor of appellees Baum and Allstate Insurance Company and reverse and remand for a new trial on all issues pertinent to the remaining appellees.
This cause arose out of a tragic accident in which the deceased was shot in the chest when the World War II vintage handgun his friend was using misfired. The accident occurred at 1:20 p.m. and the rescue unit was at the scene by 1:50 p.m. The paramedics contacted Palmetto General Hospital (the closest hospital to the accident site) at 2:00 p.m. Dr. Richard Mandel, a third year orthopedic resident who was working as the on duty emergency room doctor that day, instructed the rescue unit to bring Marks to Palmetto General. Dr. Mandel did not attempt to contact the on call thoracic surgeon at that time because he believed that Marks had an injury to the right lung with the bleeding coming from either the lung itself or a blood vessel beneath the rib and that treating the wound would require only minor surgical procedures.
Marks arrived at Palmetto General at 2:20 p.m. and at that point Dr. Mandel realized that a thoracic surgeon was needed. The first call was made to a thoracic surgeon at 2:20 p.m. For a variety of reasons an available thoracic surgeon was *1038 not located until 3:25 p.m.[1] He arrived at 3:45 p.m. and surgery began immediately. Michael Marks died at 4:45 p.m.
The personal representative filed a wrongful death action against Baum, alleging that he negligently entrusted the handgun, which he knew to be dangerous, to Marks' friend.[2] The personal representative also filed suit against Palmetto General Hospital and Dr. Ira Bloomfield who had contracted with Palmetto General to run the emergency room, alleging 1) that they were responsible for the failure of the on call system to produce a thoracic surgeon in a timely fashion and 2) that they were vicariously liable for Dr. Mandel's failure to diagnose the injury as serious when he was first contacted by the paramedics. The complaint alleged that as a result of Dr. Mandel's failure to diagnose the seriousness of the injury, the search for an available thoracic surgeon was delayed for at least twenty minutes. Finally, the personal representative filed suit against Dr. Mandel personally, alleging that he should have tried to contact a thoracic surgeon immediately upon receipt of the paramedics' report at 2:00 p.m., or that he should have sent Marks directly to Jackson Memorial Hospital, which, at the time this accident occurred, was the only hospital in Dade County with a fully staffed trauma center.[3]
The cause was tried before a jury. At the close of Marks' case the trial court granted a partial directed verdict in favor of Palmetto General and Dr. Bloomfield on the agency issue, ruling as a matter of law that neither defendant was responsible for the failure of the on call system to produce a thoracic surgeon in a timely manner. Because the jury found no negligence on the part of Dr. Mandel, the issue of the vicarious liability of Palmetto General and Dr. Bloomfield was obviated. This appeal ensued.
Appellant raises several issues on appeal. As his first point, appellant argues that it was error for the trial court to exclude as evidence Palmetto General's emergency room policy and procedure manual. We agree. The manual sets out in detail how the on call system should operate. In a section entitled "Emergency Room Coverage" the manual states:
Emergency medical care is provided by but not limited to the following:
1). An Emergency Room contract physician with specialty consultation within thirty (30) minutes.
Further sections, entitled "Response to Calls," detail when and how often the emergency room personnel will attempt to contact a physician, either by telephone or by page and, significantly, what future action will be taken against a doctor who fails to respond. Additionally, the manual contains a section on patient transfers to Jackson Memorial Hospital. Since appellant's complaint alleged negligence in both the failure of the on call system to produce a thoracic surgeon within thirty minutes and the failure of the hospital staff to send *1039 Marks on to Jackson Memorial Hospital, the manual contained relevant information which should have been given to the jury. Courts have held repeatedly that these internal manuals should be admitted when they contain either 1) evidence of a general industry custom or standard, or 2) evidence that the defendant violated its own policy or an industry standard. Nesbitt v. Community Health of South Dade, Inc., 467 So.2d 711 (Fla. 3d DCA 1985); Stambor v. 172nd Collins Corp., 465 So.2d 1296 (Fla. 3d DCA 1985); Clements v. Boca Aviation, Inc., 444 So.2d 597 (Fla. 4th DCA 1984); Nance v. Winn Dixie Stores, Inc., 436 So.2d 1075 (Fla. 3d DCA 1983), rev. denied, 447 So.2d 889 (Fla. 1984). Thus, on retrial, the emergency room policy and procedure manual should be admitted and the trial court should give the relevant jury instructions pertaining to evidence of general standards or of specific policies. See Nesbitt v. Community Health, 467 So.2d at 715.
Appellant's second issue concerns the partial directed verdict entered in favor of Palmetto General and Dr. Bloomfield on the issue of the failure of the on call system to produce a thoracic surgeon in a timely fashion. Again, we agree that this was error. Appellees Palmetto General and Bloomfield assert that there can be no vicarious liability imposed on them because appellant did not allege that any of the surgeons who finally responded committed any negligent acts. We do not believe that is the issue. Rather, the issue concerns who is going to assume ultimate responsibility for the entire on call system, a system which was designed and operated by the hospital and the doctor who contracted to run the emergency room, when that system fails. Extensive trial testimony proved that the local and national standard for on call systems is to have a specialist actually attending to the patient within thirty minutes of the call to the physician. Palmetto General had a published policy which adopted this standard. In the case at bar, however, the fact that a thoracic surgeon eventually attended to Marks was a matter of coincidence and not a result of the on call system. The system failed. A jury should decide whether the failure was a breach of the standard of care owed to Michael Marks, see § 768.45, Fla. Stat. (1979), and whether Palmetto General and/or Dr. Bloomfield should bear ultimate responsibility for the failure of the on call system to work in this case. See generally Jaar v. University of Miami, 474 So.2d 239 (Fla. 3d DCA 1985) (en banc).
The other points raised on appeal merit only brief attention. First, Dr. West was fully competent to testify as an expert under section 768.45(2)(c) and it was error to exclude his testimony. Dr. West professed great familiarity with the standard of care in the United States for these types of cases; there is no difference in that standard in Dade County. Schwab v. Tolley, 345 So.2d 747, 753 (Fla. 4th DCA 1977). Second, having instructed the jury on the standard of reasonable or ordinary care, as explained in Florida Standard Jury Instruction (Civil) 4.2, the trial court erred in then giving additional instructions on ordinary care which were confusing and misleading. Webb v. Priest, 413 So.2d 43 (Fla. 3d DCA 1982).
Finally, we hold that the court erred, under the circumstances of this particular case, in limiting the number of expert witnesses that plaintiff could call.
Reversed and remanded with instructions.
NOTES
[1] The first on call thoracic surgeon was in emergency surgery at another hospital. After determining that no other thoracic surgeon was in the hospital, calls were placed to Dr. Zequeria, the second on call thoracic surgeon, at 2:40, 2:45, 3:00, 3:05 and 3:15 p.m. He telephoned at 3:25 p.m.  but not because he received the messages from the emergency room. He just happened to call in regarding a patient of his own who was scheduled for surgery the next day. In the meantime, the emergency room contacted several general surgeons, two of whom responded and performed surgery with Dr. Zequeria.
[2] Because we are affirming the trial court's directed verdict in favor of Baum, we will not address this issue.
[3] At the time of this accident, the policy of Dade County's medical rescue service was to contact the nearest "qualified emergency medical hospital" when it had a seriously injured person. The on duty emergency room doctor would then decide, based either on his own determination or on hospital policy, whether to have the patient brought into that emergency room or to have the patient taken to another hospital better equipped to handle the injuries. With the advent of Dade County's new regional trauma center network, however, this procedure has been modified. Patients with certain types of trauma, such as gunshot wounds, will be taken automatically to the nearest trauma center, not to the nearest hospital.