541 So.2d 639 (1989)
John NICHOLS and Maude Nichols, His Wife, Appellants,
v.
HOME DEPOT, INC., a Foreign Corporation, D/B/a the Home Depot, Appellee.
No. 87-1910.
District Court of Appeal of Florida, Third District.
January 31, 1989.
Rehearing Denied May 8, 1989.
*640 Spence, Payne, Masington, Grossman & Needle, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel Eaton, Miami, for appellants.
Preddy, Kutner, Hardy, Rubinoff, Brown & Thompson and G. William Bissett, Miami, for appellee.
Before BARKDULL and NESBITT, JJ., and HELIO GOMEZ, Associate Judge.
HELIO GOMEZ, Associate Judge.
The appellant, John Nichols, was a plaintiff below in a negligence action against Home Depot, Inc. His complaint alleged that, while a business invitee on the defendant's premises, he fell off a ladder and suffered a serious injury, and that the defendant was the negligent cause of the injury. The defendant answered, generally denied liability, and alleged affirmatively that the plaintiff was comparatively negligent.
Defendant's motion for summary judgment was granted on the ground that "the record before this Court affirmatively establishes that the Defendant was not guilty of any negligence which was a proximate, legal cause of the accident wherein Plaintiff was injured." Plaintiff's motion for rehearing was denied and this appeal followed. We reverse.
Defendant operates a warehouse-style retail store selling various building materials and supplies. Because it is designed as a "warehouse," it has no separate space to store its surplus "overstock;" as a result, it stocks the various items which are for sale at lower levels accessible to its customers from floor level, and its "overstock" is placed above its "stock" at a level of at least eight feet above the floor, accessible only by ladder. When the stock available at floor level is sold out, the lower shelves are replenished by store employees from the "overstock" on the upper shelves. It is readily inferable from the record that the defendant recognizes that this unconventional method of storing its "overstock" presents dangers to its customers because it has adopted a set of standard procedures designed to prevent customers from climbing ladders to reach the "overstock," and to ensure that only its employees engage in retrieving the "overstock."
The record reflects that the defendant has twenty to thirty "store use only" ladders placed throughout the store to enable its employees to reach the items in "overstock." To prevent customers from using the ladders, all ladders are, as a matter of written company policy, painted orange  and they are supposed to have a red and white sign on them which reads that they are for employee use only. According to the assistant manager of the store, the purpose of the signs was "[t]o keep customers *641 off, you know, for their own particular welfare. A lot of people aren't used to walking up ladders." In addition, the defendant has erected signs throughout the store which request customers to "ask for assistance."
The defendant has also instructed each of its employees in writing to observe the following safety rules with respect to the "store use only" ladders: (1) the ladders should not be left open in the aisles, but should be kept in the closed position (except when being used by employees); (2) customers are to be kept off the ladders; and (3) if a customer is seen on a ladder, he should be asked to get off the ladder, and the employee should offer to assist him. The defendant also sells ladders in its store, of course, and its employees are instructed that these ladders are not to be used to reach the "overstock," and that any of these ladders found anywhere in the store should be returned to the place where they are normally stocked. Despite these precautions, several store employees admitted in their depositions that customers often used the "store use only" ladders to obtain merchandise from the elevated "overstock" areas.
On October 14, 1986, in response to a mail flyer advertising "skylights," the plaintiff went to the defendant's store to buy six of the skylights for a home he was building. He found several of the skylights he needed in stock, on a shelf approximately four feet above floor level, but there were not enough to satisfy his total needs. He then observed that additional skylights were located on the shelf directly above, approximately eight feet above floor level. At the time, a customer was standing on a ladder examining the skylights on the upper shelf, so he walked through the store for a few minutes. He then approached an employee of the defendant, who was on the telephone, and he asked the employee for some assistance in retrieving the overhead skylights. The employee replied, "Okay. No problem," and told the plaintiff he would call someone to help him. Assuming that assistance would be forthcoming, the plaintiff returned to the area of the skylights to wait. When he returned, the customer whom he had previously observed on the ladder was still there, so he walked around the store for a while longer.
When the plaintiff returned to the area, he saw the customer climbing down off the ladder. The ladder was a used ladder, and it had no signs on it prohibiting customer use. The plaintiff looked around for the assistance he had requested and, finding none, he climbed the ladder. According to the plaintiff, his experience with ladders was only that of an "average person." While picking up a skylight from the overhead shelf, he misjudged its weight; and because it was much lighter than he had expected, he lost his balance, the ladder slipped slightly, and he fell to the floor, breaking his heel. The evidence reflects that, after the accident, a number of the defendant's "store use only" ladders were found to have no signs on them, as required by the defendant's policy. The defendant's store manager admitted as much in his deposition, when he declined to state that all of the "store use only" ladders had the required signs on the date of the plaintiff's accident.
The narrow issue presented here is therefore simply this: could a jury permissibly find on the facts previously stated that the defendant failed to exercise reasonable care for the plaintiff's safety. In our judgment, a jury of reasonable persons could return such a finding.
As a preliminary matter, the plaintiff was indisputably a "business invitee" on the defendant's premises, and the defendant therefore owed him a duty to exercise reasonable care for his safety. Hall v. Billy Jack's, Inc., 458 So.2d 760 (Fla. 1984); Budet v. K-Mart Corp., 491 So.2d 1248 (Fla. 2d DCA 1986); Kolosky v. Winn Dixie Stores, 472 So.2d 891 (Fla. 4th DCA 1985), review denied, 482 So.2d 350 (Fla. 1986).
The general principle is thoroughly settled. What is and what is not reasonable care under the circumstances is, as a general rule, simply undeterminable as a matter of law. Rather, "it is `peculiarly a *642 jury function to determine what precautions are reasonably required in the exercise of a particular duty of due care.'" Orlando Executive Park v. Robbins, 433 So.2d 491, 493 (Fla. 1983); accord Weis-Patterson Lumber Co. v. King, 131 Fla. 342, 177 So. 313 (1937); Williams v. Office of Security & Intelligence, Inc., 509 So.2d 1282 (Fla. 3d DCA 1987); Ten Associates v. McCutchen, 398 So.2d 860 (Fla. 3d DCA), review denied, 411 So.2d 384 (Fla. 1981); Holley v. Mt. Zion Terrace Apts., 382 So.2d 98 (Fla. 3d DCA 1980).
The evidence reflects that, for business reasons thought beneficial by the defendant, the defendant chose to stock its merchandise in an unconventional manner  with its "overstock" in elevated areas accessible to customers by ladders placed throughout the store. This method of merchandising may have created both an acknowledged temptation and an acknowledged danger  since it resulted in customers, inexperienced in scaling ladders and unknowledgeable about the weights of items in the overhead areas, climbing ladders to retrieve those items when they found the floor stock depleted and assistance not forthcoming.
There is evidence that the defendant violated each and every safety rule which it had adopted to prevent precisely what occurred. It failed to place the required prohibitive sign on the "store use only" ladder; it failed to ensure that the ladder was closed and put away; it failed to provide the plaintiff with assistance when it was requested; and it failed altogether to enforce its "store use only" rule. These breaches of the defendant's own safety rules could provide all the evidence that a jury could possibly need to find the defendant negligent. Rules made by a defendant to govern the conduct of employees are admissible as relevant evidence of the standard of care. Steinberg v. Lomenick, 531 So.2d 199 (Fla. 3d DCA 1988) (on rehearing); Marks v. Mandel, 477 So.2d 1036 (Fla. 3d DCA 1985).
Putting aside the fact that the defendant had adopted its own set of elaborate procedures to prevent this increased risk to its customers, we think a jury of reasonable persons could conclude that several precautions were in order to minimize the possibility of precisely what occurred in this case. For example, reasonable persons could conclude that the defendant's ladders should be made inaccessible to its customers in some fashion, or restricted to employee use by appropriate signs, or that assistance should be provided when requested, or that floor level stock should be replenished immediately upon depletion, or any of a number of other reasonable steps should be taken which would serve the same end  keeping customers off of ladders and out of the overhead "overstock."
Because a number of genuine issues of material fact exist, from which a jury of reasonable persons could find each party negligent to a determinable degree, the trial court erred in granting Home Depot's motion for summary judgment. Moore v. Morris, 475 So.2d 666 (Fla. 1985). Accordingly, the judgment appealed from is reversed and the cause remanded for further proceedings.
Reversed and remanded.